696 So.2d 334 (1997)
GILCHRIST TIMBER COMPANY, et al., Appellants,
v.
ITT RAYONIER, INC., et al., Appellees.
No. 89015.
Supreme Court of Florida.
June 26, 1997.
*335 Leonard E. Ireland, Jr. of Clayton, Johnston, Quincey, Ireland, Felder, Gadd & Roundtree, P.A., Gainesville, for Appellants.
Thomas M. Baumer, Dana G. Bradford and Rebecca B. Creed of Baumer, Bradford & Walters, P.A., Jacksonville, for Appellees.
OVERTON, Justice.
We have for review the following question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in the federal courts and for which there appears to be no controlling precedent:
WHETHER A PARTY TO A TRANSACTION WHO TRANSMITS FALSE INFORMATION WHICH THAT PARTY DID NOT KNOW WAS FALSE, MAY BE HELD LIABLE FOR NEGLIGENT MISREPRESENTATION WHEN THE RECIPIENT OF THE INFORMATION RELIED ON THE INFORMATION'S TRUTHFULNESS, DESPITE THE FACT THAT AN INVESTIGATION BY THE RECIPIENT WOULD HAVE REVEALED THE FALSITY OF THE INFORMATION.
Gilchrist Timber Co. v. ITT Rayonier, Inc., 95 F.3d 1033, 1033 (11th Cir.1996). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. For the reasons expressed, we answer the question with a qualified affirmative, finding that the party who negligently transmitted the false information may be held liable when the recipient is able to establish a negligent misrepresentation cause of action as set forth in the Restatement (Second) of Torts section 552 (1977). We also conclude that the doctrine of comparative negligence applies to an action for negligent misrepresentation.
*336 The pertinent facts of this case as set forth by the Court of Appeals are as follows. Gilchrist Timber Company (Gilchrist) bought a 22,641-acre tract of timberland from ITT Rayonier, Inc. (ITT). In selling that property to Gilchrist, ITT provided Gilchrist with a year-old appraisal of the property. The appraisal listed the property as being zoned agricultural, which allowed residential usage. In fact, a vast majority of the property was zoned "preservation," which permits no residential use. After learning of the zoning restrictions, Gilchrist unsuccessfully tried to have the zoning changed. The zoning restriction thwarted Gilchrist's plans to cut the timber on the property and then sell portions for residential use. Gilchrist subsequently brought this suit in the United States District Court.
A jury found in favor of Gilchrist, but the federal district court granted judgment notwithstanding the verdict in favor of ITT. Gilchrist appealed and the Eleventh Circuit certified the aforementioned question to this Court. In certifying the question, the circuit court explained that the rule in Florida under Besett v. Basnett, 389 So.2d 995 (Fla. 1980), specifies that, in cases involving fraudulent misrepresentations, "the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." 95 F.3d at 1035 (quoting Restatement (Second)of Torts § 540 (1977)). The court, however, was unclear whether this rule should apply to situations like the instant case, which only involves a negligent rather than fraudulent misrepresentation. The court stated that Florida's standard jury instructions suggest that only in the case of a fraudulent misrepresentation is the recipient justified in relying on its truth, even where an investigation might have revealed its falsity. See Standard Jury InstructionsCiv. Cases, 613 So.2d 1316, 1319 (Fla.1993). The court noted, however, that at least one Florida district court had applied Besett's logic regarding fraudulent misrepresentations to a case involving negligence claims. See Lynch v. Fanning, 440 So.2d 79 (Fla. 1st DCA 1983).
Gilchrist argues that the rule should be the same for both a fraudulent misrepresentation and a negligent misrepresentation, asserting that the focus should be on the effect of the misrepresentation on the recipient rather than on the culpability of the misrepresenter. Under this contention, the fact that the misrepresenter did not know of the misrepresentation would be irrelevant, and the misrepresenter would be equally culpable whether the misrepresentation was the result of intentional fraud or negligence. Gilchrist also asserts that a contrary finding would require all recipients of information to assume a representation is false and require such recipients to verify each representation. We disagree.
In addressing a fraudulent misrepresentation in Besett, we held that "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had [the recipient] made an investigation, unless [the recipient] knows the representation to be false or its falsity is obvious." 389 So.2d at 998. In reaching that conclusion, we specifically adopted the Restatement of Torts' position contained in sections 540 and 541, which apply to fraudulent misrepresentations. Further, our opinion in Besett dealt with a factual situation involving the intentional misrepresentation of a vendor to a purchaser of real property. In fact, in discussing the intentional misrepresentation, we stated:
A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the twofraud and negligencenegligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter.
Id. (emphasis added). While we were discussing the negligence at issue in Besett in the context of the negligence of the purchaser, the axiom is still the same"negligence is less objectionable than fraud." Simply stated, the policy behind our holding in Besett is to prohibit one who purposely uses false information *337 to induce another into a transaction from profiting from such wrongdoing. That is not the situation presented here.
In this case, the federal court has specifically asked us to consider whether the standard we adopted in Besett applies to a party who "transmits false information which that party did not know was false." Gilchrist Timber Co., 95 F.3d at 1034 (emphasis added). This question involves a situation much different from that at issue in Besett because here the misrepresentation was not intentional. In this regard, as in Besett, the Restatement of Torts provides specific guidance, by providing:
§ 552. Information Negligently Supplied for the Guidance of Others.
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Restatement (Second) of Torts § 552 (1977). Under this provision, a misrepresenter is liable only if the recipient of the information justifiably relied on the erroneous information. The comment to section 552 explains why a negligent misrepresenter should be considered less culpable than a fraudulent misrepresenter.
The liability stated in this Section is ... more restricted than that for fraudulent misrepresentation.... When there is no intent to deceive but only good faith coupled with negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences.
The reason a narrower scope of liability is fixed for negligent misrepresentation than for deceit is to be found in the difference between the obligations of honesty and of care, and in the significance of this difference to the reasonable expectations of the users of information that is supplied in connection with commercial transactions.
Id. cmt. a (emphasis added). Additionally, under section 552A, ordinary rules of negligence liability apply. § 552A cmt. a. While the Restatement discusses the issue in terms of contributory negligence, a majority of the states that have adopted the comparative negligence doctrine and considered this issue agree that comparative negligence principles are applicable to cases involving negligent misrepresentation actions. Sonja Larsen, Annotation, Applicability of Comparative Negligence Doctrine to Actions Based on Negligent Misrepresentation, 22 A.L.R. 5th 464, 471 (1994)("The prevailing view is that comparative negligence principles are applicable to negligent misrepresentations.")[1] *338 See also Fowler V. Harper, et al., The Law of Torts § 7.6 (2d ed.1986). As noted in the above-cited annotation, the rationale for this majority view "rests on the notion that there is no reason to differentiate negligent misrepresentations from any other forms of negligence." 22 A.L.R. 5th at 471. This view is consistent with Florida law as set forth in section 768.81, Florida Statutes (1995), which provides that comparative fault principles shall apply in negligence cases. That section provides:
768.81. Comparative fault
(1) DEFINITION.As used in this section, "economic damages" means past lost income and future lost income reduced to present value; medical and funeral expenses; lost support and services; replacement value of lost personal property; loss of appraised fair market value of real property; costs of construction repairs, including labor, overhead, and profit; and any other economic loss which would not have occurred but for the injury giving rise to the cause of action.
(2) EFFECT OF CONTRIBUTORY FAULT.In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.
(3) APPORTIONMENT OF DAMAGES.In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
(4) APPLICABILITY.
(a) This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. In determining whether a case falls within the term "negligence cases," the court shall look to the substance of the action and not the conclusory terms used by the parties.

(b) This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution, to any action based upon an intentional tort, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895.
(5) APPLICABILITY OF JOINT AND SEVERAL LIABILITY. .Notwithstanding the provisions of this section, the doctrine of joint and several liability applies to all actions in which the total amount of damages does not exceed $25,000.
(6) Notwithstanding anything in law to the contrary, in an action for damages for personal injury or wrongful death arising out of medical malpractice, whether in contract or tort, when an apportionment of damages pursuant to this section is attributed to a teaching hospital as defined in s. 408.07, the court shall enter judgment against the teaching hospital on the basis *339 of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.
(Emphasis added.) In fact, as indicated by the emphasized language, this section specifically includes "loss of appraised fair market value of real property," which is the very type of loss at issue in this action.
By this opinion, we adopt the Restatement (Second) of Torts' position on negligent misrepresentation contained in section 552. Further, we find that the comparative fault provisions contained in section 768.81 apply to actions involving negligent misrepresentation. We disapprove Lynch to the extent it could be construed to hold to the contrary.
In reaching our decision today, we reaffirm our previous conclusion in Johnson v. Davis, 480 So.2d 625, 628 (Fla.1985), that "[o]ne should not be able to stand behind the impervious shield of caveat emptor and take advantage of another's ignorance." Moreover, we still conclude that "[t]he law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it." Id. This does not mean, however, that the recipient of an erroneous representation can hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error. Nor are we persuaded that the parade of horribles espoused by Gilchrist will follow our decision reached today. Clearly, a recipient of information will not have to investigate every piece of information furnished; a recipient will only be responsible for investigating information that a reasonable person in the position of the recipient would be expected to investigate. For instance, in this case, the buyer purchased over 22,000 acres of long-established timberland with the intent of subdividing the property for residential resale purposes. Certainly, the seller could legitimately argue comparative negligence if the buyer failed to convey that intent to the seller and failed to verify, prior to the purchase, the zoning classification set forth in a year-old appraisal contained in the materials furnished by the seller. In our view, under these circumstances, a jury should resolve the factual issue of the degree of negligence for which each party should be found accountable.
Accordingly, we answer the question with a qualified affirmative, finding that the party who negligently transmitted the false information may be held liable if the recipient is able to establish a negligent misrepresentation cause of action as set forth in the Restatement (Second) of Torts section 552, and that the doctrine of comparative negligence applies.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] At least thirteen states have determined either explicitly or implicitly that comparative negligence principles are applicable to negligent misrepresentation actions (all apply state statutory provisions): See Fullmer v. Wohlfeiler & Beck, 905 F.2d 1394 (10th Cir.1990)(Utah); Portage II v. Bryant Petroleum Corp., 899 F.2d 1514 (6th Cir. 1990)(Ohio); Geosearch, Inc. v. Howell Petroleum Corp., 819 F.2d 521 (5th Cir. 1987) (Texas); Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. Partnership, 817 F.Supp. 908 (D.C.Kan. 1993); Robinson v. Poudre Valley Federal Credit Union, 654 P.2d 861 (Colo.Ct.App. 1982); Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 657 A.2d 212 (1995); Seagraves v. ABCO Mfg. Co., 118 Ga.App. 414, 164 S.E.2d 242 (1968); Pastor v. Lafayette Bldg. Assn., 567 So.2d 793 (La.Ct.App.1990); Florenzano v. Olson, 387 N.W.2d 168 (Minn.1986); Gurnsey v. Conklin Co., 230 Mont. 42, 751 P.2d 151 (1988); H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 461 A.2d 138 (1983); Corbin v. Dickerson, 155 Vt. 486, 586 A.2d 1104 (1990); Synowicz v. Mazur, 148 Wis.2d 952, 438 N.W.2d 596 (Wis.Ct. App.1989).

The following five states disagree, although at least two did so because they determined that contributory rather than comparative negligence governed the issue despite statutes that appeared to indicate to the contrary: Greycas, Inc. v. Proud, 826 F.2d 1560 (7th Cir.1987)(Illinois); Carroll v. Gava, 98 Cal.App.3d 892, 159 Cal.Rptr. 778 (1979); Cedar Falls Bldg. Center, Inc. v. Vietor, 365 N.W.2d 635 (Iowa.Ct.App.1985)(contributory negligence rather than comparative negligence applies); Estate of Braswell v. People's Credit Union, 602 A.2d 510 (R.I.1992); Condor Enters., Inc. v. Boise Cascade Corp., 71 Wash. App. 48, 856 P.2d 713 (1993) (contributory negligence rather than comparative negligence applies).