United States Court of Appeals,

Eleventh Circuit.

No. 94-3521.

GILCHRIST TIMBER CO., C.L. Brice, L.A. Brice, Andy M. Brice, Sam Brice, Plaintiffs-Appellants,

v.

ITT RAYONIER, INC., Defendant-Appellee,

v.

NATURAL RESOURCE PLANNING SERVICES, INC. and Andrew V. Santangini, Third-Party-Defendants.

Nov. 18, 1997.

Appeal from the United States District Court for the Northern District of Florida. (No. 88-10172-MMP), Maurice M. Paul, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LOGAN[*], Senior Circuit Judge.

LOGAN, Senior Circuit Judge:

In this diversity action plaintiffs, Gilchrist Timber Company, C.L. Brice, L.A. Brice, Andy M. Brice, and Sam Brice,[1] alleged that defendant ITT Rayonier, Inc. made a material false representation of the zoning of a large block of Florida timberland that it sold to plaintiffs, causing them economic injury. After a jury found in favor of plaintiffs the district court granted defendant judgment notwithstanding the verdict. Plaintiffs appealed, asserting the district court (1) made erroneous and irrelevant findings of fact; and the district court erred in ruling that the jury could not reasonably have found (2) plaintiffs justifiably relied on defendant's representation; and (3) plaintiffs sustained the damages awarded. Our review of the record and the law convinced us of the merit of plaintiffs' claims except with respect to one unsettled question of Florida law. Deciding that

---

[*]Honorable James K. Logan, Senior U.S. Circuit Judge for the Tenth Circuit, sitting by designation.

[1]The original complaint named as plaintiff Gilchrist Timber Company. The amended complaint substituted as plaintiffs C.L. Brice, as trustee of the Carl L. Brice 1977 Irrevocable Trust, L.A. Brice, Andy M. Brice, and Sam Brice, individually and doing business as Gilchrist Timber Company, a Florida Partnership. Thereafter Carla Sutton (a/k/a Carla Brice) and David M. Miller, cotrustees of the Carl L. Brice 1977 Irrevocable Trust, joined as plaintiffs.

the unsettled question would be determinative of the appeal we certified it to the Florida Supreme Court. *See Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 95 F.3d 1033 (11th Cir.1996). We now have reviewed the court's answer, and proceed to address all of the issues raised on appeal.

We review de novo a district court's order granting judgment notwithstanding the verdict, *Sherrin v. Northwestern Nat'l Life Ins. Co.,* 2 F.3d 373, 377 (11th Cir.1993), applying the same standard as the district court:

> [W]e consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied.

*Id.* (quotation omitted). We must determine "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Rabun v. Kimberly-Clark Corp.,* 678 F.2d 1053, 1057 (11th Cir.1982).

I

In 1985, Jimmy Ray Mincy, a timber broker, became interested in purchasing a tract of timberland (the timberland) from defendant. He solicited C.L. Brice, who was involved in timber, ranching and real estate, to join him in making the purchase. Brice and Mincy went to look at the 22,641-acre tract. Brice was familiar with the timberland because it was part of a larger tract on which he had been outbid when he tried to obtain a purchase option in 1949. The roads and improvements that ITT had made, along with the timber, impressed Brice. Mincy and Brice agreed they would offer defendant $550 per acre for the timberland.[2] Brice and Mincy presented evidence at trial that they planned to cut and sell the timber and then to sell a significant portion of the land in small tracts for farming or residential development.

---

[2]The evidence was in conflict whether they would seek an option or outright purchase.

Mincy and Brice met with ITT's representatives to discuss purchasing the timberland. Brice testified that at this first meeting Kent Smith, then ITT's Director of Forest Land Management, gave Brice and Mincy a copy of an April 1984 appraisal that ITT had obtained when it decided to sell various timberlands to raise cash.[3] The document included a land appraisal by Andrew Santangini and a timber appraisal by Natural Resource's Tom Mastin. The appraisal stated that the timberland was zoned for agriculture, which allows residential usage. Mincy and Brice testified they decided to buy the timberland only because the zoning allowed residential development. Uncontroverted evidence at trial indicated that the parties never discussed zoning, although the information contained in the timber appraisal—such as the quantity and quality of timber—was discussed at length.

After negotiations, the parties contracted separately for the purchase and sale of the land and the timber. Although there were two contracts, each was dependent upon the other. Mincy and Brice paid a total of $12,452,550 for the property, including $6,226,275 for the land and pre-merchantable timber ($275 per acre) and $6,226,275 for the merchantable timber (also $275 per acre). Defendant financed the purchase of the timber and Florida National Bank and Gainesville State Bank financed the purchase of the land.

Immediately after the closing, Brice and Mincy conveyed the land and timber to their partnership, Gilchrist Timber Company. More than a year after the purchase, when Gilchrist Timber had removed some timber and attempted to sell some acreage, plaintiffs learned that the vast majority of the timberland was actually zoned "preservation," a classification permitting no residential use.[4] Brice and Mincy unsuccessfully attempted to change the zoning. Plaintiffs asserted that they could not sell the land as planned and lost the benefit of their bargain. They brought this

[3]Some evidence also indicated that defendant included the appraisal in a prospectus sent to other potential purchasers of the timberland.

[4]The record contains conflicting testimony on exactly how and when plaintiffs discovered the zoning problem.

suit, alleging defendant misrepresented that the land was zoned agricultural.[5] The jury found in favor of plaintiffs and awarded damages of $1,676,500, but the district court granted defendant ITT's motion for judgment notwithstanding the verdict, finding that plaintiffs failed to present evidence to support a jury finding on several elements of negligent misrepresentation.

The district court relied on the statements of the elements to prove negligent misrepresentation set out in *Baggett v. Electricians Local 915 Credit Union,* 620 So.2d 784 (Fla. 2d D.C.A.1993). The plaintiffs must show:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

*Id.* at 786. Although *Baggett* stated the elements somewhat differently than *Restatement (Second) of Torts* § 552 (1977), adopted by the Florida Supreme Court in response to our certification order, *see Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 696 So.2d 334, 337, 339 (Fla.1997), there is no substantial difference.

After listing numerous factual conclusions based on what it characterized as undisputed evidence,[6] the district court found that (1) assuming zoning "was a *material fact* to Mr. Brice and

---

[5]Defendant ITT brought in as third party defendants Andrew Santangini, who completed the land appraisal, and Natural Resource Planning, which completed the timber appraisal, asserting a right of indemnity in the event ITT were held liable. Plaintiffs made no direct claims against the third party defendants. The jury found no liability against the third party defendants, and that determination is not part of this appeal.

[6]Those conclusions included the following:

> 1. ITT was unaware of the zoning classification on the subject property until about one year after the closing.

> 2. ITT made no representation to the plaintiffs about the zoning classification of the subject property, and the subject of "zoning" was never discussed or made an issue between the parties prior to the closings.

> 3. The plaintiffs made no independent effort to ascertain the zoning classification of the subject property at any time prior to closing.

> 4. At no time during the negotiations with ITT did the plaintiffs ever assert

4

to Mr. Mincy, this was never communicated to ITT, either verbally or in writing"; (2) "ITT did not knowingly misrepresent the zoning classification of the subject property. ITT was itself unaware of the property's zoning, and had no cause to know that the zoning classification stated in the appraisal report was inaccurate"; (3) "and most importantly, there is a complete void of any evidence that would tend to establish that ITT *intended to induce the plaintiffs to act on the representation*." 7 R. tab 273 at 6. On appeal, plaintiffs take issue with these three findings, arguing that they are "either incorrect or irrelevant, or both." Initial Brief of Appellant at 25. We agree.

## II

## A

Whether plaintiffs told defendant ITT that the zoning was important to them is not controlling; the question is whether zoning was a material fact. Under Florida law, a fact is material if it made a difference in plaintiffs' decision to enter the contract. *See Revitz v. Terrell,* 572 So.2d 996, 998 (Fla. 3d D.C.A.1990) (fact is material if it substantially affects value of property, or if but for alleged misrepresentation party would not have entered contract). Evidence that plaintiffs never communicated to defendant that zoning was important might tend to show that it was not material—because a buyer would likely tell a seller if zoning was important—but it does not preclude a contrary conclusion.

that a particular type of zoning was either "assumed" to be in place, or was a necessary condition of the contract.

5. The only reference to the zoning classification of the property was contained in the appraisal report prepared by Natural Resources Planning Services/Andrew Santangini for ITT a year before negotiations between Brice and ITT were undertaken.

6. Prior to the first meeting with ITT, the plaintiffs, unaware of the zoning classification of the property, formulated a price of $550.00 per acre for the land; that this price was offered to the defendant at the first meeting, before a copy of the appraisal report was furnished to Mr. Brice, which price or offer never varied.

7. The property (including both the land and the timber) was sold to the plaintiffs for their offered price of $550.00 per acre.

7 R. tab 273 at 4-5 (footnote omitted).

5

Defendant argues that plaintiffs failed to produce any evidence from which a jury could find the zoning was material, pointing to evidence that plaintiffs decided on their offering price before reviewing the appraisal misstating the zoning. But Mincy and Brice testified they set the price assuming that zoning was agricultural; the appraisal confirmed their assumption, so they did not change the price. Thus, the evidence that the buyers set a firm price does not mean that zoning was immaterial.

Defendant points out that several witnesses testified that plaintiffs had no plan to sell parcels for residential use, and argues that the lack of such a plan belies plaintiffs' argument that zoning made a difference in their decision to enter the contract. But plaintiffs introduced evidence that from the beginning they did intend to sell off parcels of land to repay the financing banks. The conflict created a factual issue for the jury.

Defendant also argues that under Florida law the contract's silence as to zoning conclusively demonstrates that zoning was not material to plaintiffs, relying on *Saunders Leasing Sys., Inc. v. Gulf Cent. Distribution Ctr., Inc.,* 513 So.2d 1303 (Fla. 2d D.C.A.1987), *review denied,* 520 So.2d 584 (Fla.1988). In *Saunders,* a lessee alleged that a lessor fraudulently represented the mileage and condition of its trucks as an inducement to lessee. That lessee argued it would not have entered the contract but for the alleged misrepresentations. The appellate court disagreed, citing several reasons, including "the obvious fact that if those terms were so material to [the] bargain, they would or should have been included in the contract. Since they were not, and particularly since [the lessee's] attorney added the last revisions to the contract, the argument must fail." *Id.* at 1306-07. *Saunders* is distinguishable; in the instant case the attorneys for defendant and plaintiffs collaborated on the last contract revisions; Brice's attorney typed the final draft of the contract with ITT attorney Austin Peele present and giving input. Further, a rule that a fact is not material if not included in the contract would effectively eliminate fraud in the inducement claims, which Florida recognizes. *See, e.g., Ton-Will Enters., Inc. v. T & J Losurdo, Inc.,* 440 So.2d 621 (Fla. 2d D.C.A.1983).

Defendant alternatively asserts that no evidence demonstrates it made *any* representation as to zoning. It argues that by merely passing on a third party's information to plaintiffs without commenting on the contents of the appraisal or the qualifications of the appraiser it made no representation of material fact. Plaintiffs counter that by handing out the appraisal report in trying to market the property defendant represented that the facts stated in the appraisal were true. Defendant did furnish the appraisal report to Brice and Mincy at their first or second meeting. The appraisal identified a list of important facts including that the parcel was zoned agricultural, and stated "[t]he subject property is zoned for agricultural use, according to the Gilchrist County zoning ordinance. This zoning classification permits a wide variety of agricultural uses including timber production. The subject parcels conform to the zoning classification." I R. tab 21 ex. A.

Florida case law supports plaintiffs' position that defendant made a representation about zoning by passing on the appraisal. For example, in *Lynch v. Fanning,* 440 So.2d 79 (Fla. 1st D.C.A.1983), the seller of property procured a survey indicating the property had 125 feet of water frontage. The seller provided a copy of the survey to the buyer, who also obtained a Multiple Listing Service form and a plat of the property indicating 125 feet of frontage. The contract for sale of the land did not mention water frontage. After the closing the buyer discovered that the water frontage was only ninety-six feet, and sued the seller. The trial court granted the seller summary judgment, finding no evidence of fraudulent misrepresentation and that buyer had a duty to ensure he was purchasing the property described in the legal description. The appeals court reversed, stating that even an innocent misrepresentation of a material fact, if relied upon by the buyer, could support an action. The *Lynch* court implicitly concluded that the seller represented the amount of frontage by providing a copy of the survey to the buyer.[7] *Restatement (Second) of Torts* § 552(1), adopted in *Gilchrist Timber Co.,* speaks of negligently "supply[ing] false information." Thus,

---

[7]The Florida Supreme Court, answering the question we certified, disapproved *Lynch* to the extent it treated negligent misrepresentations by the same rules as fraudulent misrepresentations. *Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 696 So.2d 334, 339 (Fla.1997). We do not construe that disapproval to extend to the issue whether the jury could find that by distributing the appraisal to the buyer the seller adopted the representations made therein.

contrary to the district court's reasoning, under Florida law the jury here could have found that by distributing the appraisal ITT made a representation about zoning by passing to plaintiffs the appraisal containing the zoning representations.

B

Plaintiffs next assert that the district court erred in concluding plaintiffs' evidence did not establish the knowledge element. The knowledge element of negligent misrepresentation is satisfied when the representer "made the representation without knowledge of its truth or falsity or should have known the representation was false." *Baggett,* 620 So.2d at 786. The Restatement, quoted with approval in *Gilchrist Timber Co.,* 696 So.2d at 337, identifies negligent representation, as distinguished from fraudulent representation, as "[w]hen there is no intent to deceive but only good faith coupled with negligence." *Restatement (Second) of Torts* § 552 cmt. a. The district court found that ITT did not knowingly misrepresent the zoning and was not even aware of the zoning and "had no cause to know" the zoning category was inaccurate. 7 R. tab 273 at 6. This finding fails to acknowledge that the mere statement of a fact, without knowledge as to its truth or falsity, satisfies the knowledge element. Thus, because the district court misapplied Florida law we need not discuss the parties' specific contentions as to the element of knowledge.

C

Plaintiffs next attack the district court's finding that no evidence established that ITT intended to induce plaintiffs to act on the zoning representation. The district court relied heavily on this factor in granting defendant's JNOV motion. Plaintiffs argue that under the circumstances—plaintiffs were about to purchase land and defendant ITT gave them an appraisal concerning that land—it is "highly improbable" that "defendant did not intend to back the representations" in the report. Initial Brief of Appellant at 27 (quoting district court's order denying defendant's motion for summary judgment). Plaintiffs further point to testimony by ITT Rayonier executive William Berry that he may have used the appraisal to try to get them to raise their offer. In fact, the only logical purpose for a seller to provide a potential buyer with favorable information

8

about the land would be to persuade that potential buyer to buy the property. A jury could reasonably find ITT intended to use the information in the appraisal to induce plaintiffs to buy the land; the district court erred in concluding otherwise.

III

Defendant asserts that even if the district court erred in its findings on the first three elements that we must uphold the JNOV for two other reasons: the jury could not reasonably have found that plaintiffs (1) justifiably relied on the misrepresentation, and/or (2) sustained the damages awarded. We address the damages issue first because if defendants are correct on that issue we need not reach the more difficult issue of justifiable reliance.

A

ITT asserts that plaintiffs did not prove any damages. Plaintiffs sought damages for the "benefit of the bargain"—"the difference between the actual value of the property and its value had the alleged facts regarding it been true." *Martin v. Brown,* 566 So.2d 890, 891 (Fla. 4th D.C.A.1990). On appeal defendant ITT does not raise the legal issue whether "benefit of the bargain damages" were appropriate. Rather, it argues that plaintiffs utterly failed to introduce evidence of the difference in value, as of the October 24, 1985, sale date, between the property as actually zoned (preservation) and the property as represented in the appraisal (agricultural zoning). Defendant asserts that plaintiffs did not produce any evidence of the value of the property on October 24, 1985, but relied on the 1984 and 1988 appraisals; and that these appraisals provide no evidence of the property value at the time of sale because Florida courts have excluded appraisals dated a few months before a purchase. *See Dade County v. Southeast (U.S.) Recycling Corp.,* 422 So.2d 1036 (Fla. 3d D.C.A.1982) (rejecting appraisal conducted six months before date of taking); *Culbertson v. State Road Dep't,* 165 So.2d 255, 256 (Fla. 1st D.C.A.1964) (appraisal completed four months before taking in eminent domain case). Those cases are distinguishable. *Culbertson* addressed whether the evidence permitted an inference that the value had not changed between the time of the appraisal and the date of taking; *Dade County* concerned evidence that the value of the appraisal

9

was affected by knowledge the county was attempting to condemn the property. Neither case establishes when an appraisal is too remote to be admissible.

Defendant further argues that even if the 1984 and 1988 appraisals are probative of the value of the land on October 24, 1985, the difference between the 1984 appraised value of $8,537,000 and the 1988 appraised value of $6,014,500 (excluding land sold) was solely the result of declining market conditions. Indeed, appraisers Walter Lampe and Andrew Santangini[8] both testified that whether the property was zoned agricultural or preservation had no effect on the value, because either conformed to the highest and best use of the property as a continued forestry operation.

Plaintiffs assert that the 1984 land appraisal, which was based on agricultural zoning, could be projected upward by five percent per year to reach a value of $9,177,265 for the land if zoned agricultural as of the sale date. They then note that the 1988 Santangini appraisal, which acknowledged the preservation zoning, valued the property at $6,226,250. Plaintiffs contend that the difference of almost three million dollars is attributable to the misrepresentation as to zoning. Defendant counters that Santangini testified the lower appraisal value in 1988 was due only to a decline in the market, and although he used a five percent per year upward projection between 1980 and 1984, such an inflation factor was not appropriate after 1984. The jury, of course, was free to accept or reject all or part of Santangini's testimony.

Plaintiffs demonstrated that they sold almost 2,000 acres of the property, some in small tracts, for an average price of more than $1,000 per acre (for the land and any timber on it). Some of those sales were rescinded after plaintiffs and the buyers discovered the land was zoned preservation. Finally, although the two appraisers testified that zoning made no difference in the value of the property, those appraisers also acknowledged that preservation zoning allowed a very limited use of land while agricultural zoning allowed a wide range of uses. Thus, the record contains

---

[8]Lampe testified that on October 24, 1985, the property, including land and timber, was worth $550 per acre, with a total value of $12,452,550. This was the exact amount plaintiffs paid for the land and timber. One problem with the appraisals of the land in 1985 or later is that they were based in part on the amount plaintiffs paid for the property.

10

evidence on which a jury could assess damages based on the difference in value between the land as actually zoned and as represented at the time of sale.[9]

B

Plaintiffs presented substantial evidence that they in fact relied on the zoning representation. Mincy and Brice testified that they would not have purchased the land if they had known that it was not zoned agricultural; the bank officers testified that they would not have made the loan financing the purchase if they had known that the land was zoned preservation. Defendant vigorously countered with its own evidence. The fact question of actual reliance thus was one for the jury which resolved the issue in plaintiffs' favor.

This brings us to the question of the legal standard for "justifiable" reliance in a negligent misrepresentation action. Plaintiffs argued to us that under Florida law ITT had a duty to discover the error in the appraisal but plaintiffs had no corresponding duty to determine whether the facts in the appraisal on which they relied were true. They relied on *Besett v. Basnett,* 389 So.2d 995 (Fla.1980), a fraudulent misrepresentation case. Our study of the law led us to the conclusion this was an unsettled issue in Florida, as applied to a negligent misrepresentation case. We therefore submitted the following certified question to the Florida Supreme Court to secure its guidance:

> Whether a party to a transaction who transmits false information which that party did not know was false, may be held liable for negligent misrepresentation when the recipient of the information relied on the information's truthfulness, despite the fact that an investigation by the recipient would have revealed the falsity of the information.

*Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 95 F.3d 1033 (11th Cir.1996).

The Florida Supreme Court has answered our question "with a qualified affirmative, finding that the party who negligently transmitted the false information may be held liable when the recipient is able to establish a negligent misrepresentation cause of action as set forth in the

---

[9]Defendants also argue that Gilchrist Timber suffered no injury because Brice testified that Gilchrist Timber "eventually will realize a $4,700,000 gain on the timber, with a $2,200,000 loss on the land," Brief of Appellee Rayonier, Inc. at 49-50, for a gross profit of $2.5 million dollars on the transaction. This projected "profit," however, does not comport with the parties' presentation of their cases and must be discounted for the time value of money.

11

Restatement (Second) of Torts section 552 (1977)," and also concluded that "the doctrine of comparative negligence applies to an action for negligent misrepresentation." *Gilchrist Timber Co.,* 696 So.2d at 335.

In its supplemental brief defendant argues that plaintiffs did not, and cannot, establish a negligent representation cause of action under Restatement § 552. ITT contends it did not intend to induce plaintiffs' reliance on the zoning information, plaintiffs did not suffer pecuniary loss as a result of their reliance, and plaintiffs did not justifiably rely on the appraisal report.

We have in this opinion rejected defendant's contentions on all of these issues it reargues except the question of the justifiability of plaintiffs' reliance. The Restatement position adopted by the Florida Supreme Court did not change in any significant way the elements of liability for negligent representation stated by *Baggett.* Thus we conclude that the district court erred in granting defendant JNOV, and we see no need to order a retrial on any question except that of the comparative negligence of the parties under Fla.Stat. § 768.81. The Florida Supreme Court stated that

> the law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it. This does not mean, however, that the recipient of an erroneous representation can hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error.... Clearly, a recipient of information will not have to investigate every piece of information furnished; a recipient will only be responsible for investigating information that a reasonable person in the position of the recipient would be expected to investigate. For instance, in this case, the buyer purchased over 22,000 acres of long-established timberland with the intent of subdividing the property for residential resale purposes. Certainly, the seller could legitimately argue comparative negligence if the buyer failed to convey that intent to the seller and failed to verify, prior to the purchase, the zoning classification set forth in a year-old appraisal contained in the materials furnished by the seller. In our view, under these circumstances, a jury should resolve the factual issue of the degree of negligence for which each party should be found accountable.

*Gilchrist Timber Co.,* 696 So.2d at 339 (quotation omitted).

Although ITT requested a comparative negligence instruction, *see* 7 R. tab 225, the jury in the instant case was instructed that "a party relying upon the representation of another has no affirmative duty to investigate the statement," *see id.* tab 227 at 7. Therefore, we must remand for

12

the limited purpose of presenting to a jury the question of comparative negligence:  *e.g.,* whether plaintiffs were negligent and, if so, the degree to which the damages should be reduced.

REVERSED and REMANDED for further proceedings consistent with this opinion.