[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13672

_____

D.C. No. 9:12-cv-80808-KLR

GAYLE HELMAN,
an individual,

Plaintiff-Appellant,

versus

BANK OF AMERICA,
successor by merger to BAC Home Loan Servicing, LP,
f.k.a. Countrywide Home Loan Servicing, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 12, 2017)

Before MARCUS, ANDERSON, and GINSBURG,[*] Circuit Judges.

---

[*]    Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

PER CURIAM:

Plaintiff-appellant Gayle Helman ("Helman") challenges the dismissal, with prejudice, of her action against defendant-appellee Bank of America, N.A. ("BANA" or "the Bank") for allegedly wrongful practices in connection with the home mortgage loan and home equity line of credit secured by her residence. We have carefully reviewed the briefs of the parties, along with the relevant portions of the record, and we have had the benefit of a vigorous oral argument. For the reasons fully explored at oral argument, and set forth briefly below, we conclude that the judgment of the district court should be affirmed.

## I.     Background

In 2004, Helman obtained a home mortgage loan and a home equity line of credit from BANA, both of which were secured by her primary residence. In 2009, she filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Florida. She subsequently received a discharge pursuant to § 727 of the Bankruptcy Code, after which the bankruptcy court issued a final decree and closed the case.

Following Helman's discharge from bankruptcy, BANA continued to send her monthly statements regarding the status of both loans. She responded by filing a putative class action in the Southern District of Florida, alleging violations of both federal and Florida law. Her amended complaint asserted a federal claim

2

under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and several Florida state law claims (collectively, "the State Law Claims") for: (1) a violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72 et seq.; (2) a violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201 et seq.; (3) common law conversion; (4) fraudulent inducement; and (5) negligent misrepresentation.

BANA filed two motions in response—a motion to dismiss and a motion to refer the case to bankruptcy court. The first argued that the FDCPA claim should be dismissed because BANA was not a "debt collector" as statutorily defined and that Helman failed to state a claim under state law. The second argued that all of the claims were premised on an underlying violation of the bankruptcy injunction that issued upon Helman's discharge from bankruptcy and that the Bankruptcy Code preempted the State Law Claims. The district court agreed and entered an order dismissing the FDCPA claim, finding the State Law Claims preempted, and referring the matter of the alleged injunction violation to the bankruptcy court. Helman filed an appeal to this Court, which we dismissed because it was appealable neither as a final order nor as an interlocutory appeal.

After the parties represented to the bankruptcy court that neither of them was arguing that a violation of the bankruptcy injunction had occurred, the case returned to district court on motion from Helman. As relevant here, the court

3

declined to reconsider its earlier ruling that BANA was not a debt collector with respect to Helman under the FDCPA and—notwithstanding its earlier ruling on preemption—dismissed the State Law Claims with prejudice for failure to state a claim. This appeal followed.

## II.    Discussion

We examine first Helman's challenge to the dismissal of her FDCPA claim before turning to the dismissal of her State Law Claims. We review "de novo a district court's dismissal of a complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief after accepting the factual allegations of the complaint as true and considering them in the light most favorable to the plaintiff." Starship Enters. of Atlanta, Inc. v. Coweta County, 708 F.3d 1243, 1252 (11th Cir. 2013).

### A. Helman's FDCPA Claim

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To state a claim under the FDCPA, the complaint must allege that "(1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the statute; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Eke v. FirstBank Fla., 779 F. Supp. 2d 1354, 1357 (S.D. Fla. 2011). As step two of that three-part test makes clear, "the FDCPA does

4

not apply to all creditors; it applies only to professional debt-collectors." Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258 n.3 (11th Cir. 2014). Accordingly, it specifically exempts from its reach "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was originated by such person [or] which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

We have no trouble concluding that BANA is not a debt collector as that term is defined by the FDCPA. Helman's amended complaint makes clear that she obtained both her home loan and her home equity line of credit from BANA. As the originator of those loans, the Bank is plainly not subject to the provisions of the FDCPA. There is simply no indication that the terms of the statute were meant to apply where, as here, the Bank originated the loans in question and then sought to collect on them.

In addition to falling squarely outside the definition of a debt collector for FDCPA purposes, the Bank also falls squarely inside the definition of a creditor under the same statute. Helman attempts to argue that BANA is not a creditor because, following her bankruptcy discharge, it is no longer someone "to whom a debt is owed." 15 U.S.C. § 1692a(4). However, the FDCPA actually defines a creditor to include "any person who offers or extends credit creating a debt or to whom a debt is owed." Id. (emphasis added). Therefore, regardless of whether

5

Helman's debt is, in fact, still owed,[1] it is clear to us that BANA extended the credit creating the debt and is, accordingly, a creditor under the FDCPA.

Accordingly, where BANA both clearly is a creditor and clearly is not a debt collector under the terms of the statute, we have no difficulty concluding that the district court's decision to dismiss Helman's FDCPA claim was correct and is due to be affirmed.[2]

## B. Helman's State Law Claims

After this matter returned from the bankruptcy court, the district court dismissed each of the State Law Claims for failing to state a claim for relief. On appeal, Helman challenges only the dismissal of her FCCPA, fraudulent inducement, and negligent misrepresentation claims. We discuss first the FCCPA claim before turning to the fraudulent inducement and negligent misrepresentation claims.

---

[1]    We need not, and expressly do not, decide whether BANA satisfies the criteria of a creditor for the alternative reason that they are someone "to whom a debt is owed."

[2]    We also find no merit in Helman's argument that, simply because BANA sought to collect on a debt that it was owed, the Bank somehow transformed itself from a creditor to a debt collector. Such an approach would prevent an FDCPA creditor from ever seeking payment on a loan without subjecting itself to the provisions of the statute.

6

Although her amended complaint did not specify under which provision of the FCCPA she was proceeding, the district court treated the action as arising under Fla. Stat. § 559.72(9), which provides:

> In collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

The FCCPA applies to anyone who attempts to collect a consumer debt which, unlike the FDCPA, brings BANA within its ambit. Therefore, the Bank would be in violation of the FCCPA if it knew that the debt was not "legitimate" or asserted a legal right that did not exist—such as the right to proceed against Helman personally despite the discharge of her personal liability in bankruptcy.

This assertion of a right to proceed personally need not have been explicit; this Court has recognized that violations can occur through implied threats and statements in a communication with a debtor. See, e.g., Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1303 & n.2 (11th Cir. 2014). Whether a communication contains an implied assertion of the right to proceed personally is a question we approach from the perspective of the least sophisticated consumer. See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193–94 (11th Cir. 2010).[3]

---

[3] Although LeBlanc, among others, applied the least sophisticated consumer standard to

7

While this standard does not impose on consumers a duty " 'to suspect the honesty of those with whom [they] transact[] business,' " id. at 1194 (quoting Fed. Trade Comm'n v. Standard Educ. Soc'y, 302 U.S. 112, 116, 58 S. Ct. 113, 115 (1937)), it does presume that they " 'possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care,' " id. (quoting Cloman v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993)). Thus, the test strikes a balance between "protecting naïve consumers" and "prevent[ing] liability for bizarre or idiosyncratic interpretations of collection notices." Id. (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)).

The crux of Helman's claim under the FCCPA, and indeed the basis of each of Helman's claims, is her assertion that the monthly statements[4] sent to her after her bankruptcy discharge were implied assertions of a right to collect against her personally, that BANA knew it had no such right because of her discharge, and that BANA was thus in violation of the FCCPA. BANA, of course, defends that its

---

the FDCPA, it is applicable in the FCCPA context as well, given the Florida statute's instruction that "[i]n applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the . . . federal courts relating to the federal [FDCPA]." Fla. Stat. § 559.77(5).

[4]      Helman's complaint and briefs on appeal point only to the monthly statements sent to her as potentially violating the law.

8

monthly statements were sent pursuant to its right under 11 U.S.C. § 524(j) to seek "periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." § 524(j)(3). BANA argues that even a least sophisticated consumer in Helman's shoes would not have been misled by its monthly statements.

We are confident that no consumer—even the least sophisticated one—could have been misled into thinking that BANA was seeking to collect against her personally on the basis of the monthly statements Helman received. As an initial matter, Helman's bankruptcy discharge informed her that it "prohibit[ed] any attempt to collect . . . a debt that has been discharged" but that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, . . . after the bankruptcy, if that lien was not avoided or eliminated." This is consistent with BANA's right to seek payment under 11 U.S.C. § 524.

More significantly, BANA's monthly statements themselves—and in particular, the statements covering the home mortgage—informed even a least sophisticated consumer that BANA recognized Helman was not personally liable, but that the security agreement allows foreclosure if the monthly payments are not made. We recognize that both monthly statements contain terms that courts, including this one, have previously suggested might—in other circumstances— indicate an attempt to collect personally against a debtor. See, e.g., Caceres, 755

9

F.3d at 1303 n.2. But in the circumstances of this case the express language of the home mortgage monthly statement could not be clearer:

<u>FOR</u> <u>INFORMATION</u> <u>PURPOSES</u>

. . .

**The Impact of the Bankruptcy:** Our records indicate that in the past you received a discharge of this debt in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met.

A least sophisticated consumer—reading that notice with some care—would be informed that she (1) has no personal obligation to repay the debt; (2) is not personally liable for the debt; and (3) cannot be pressured to repay the debt. We are simply unable to conclude that a debtor, having been so informed, could have been misled into believing that the Bank was implying a right to proceed against her personally.

Similar to the home mortgage statement, the home equity line of credit statement provided that it was:

being furnished for informational purposes only and should not be construed as an attempt to collect against you personally. While your obligation to Bank of America, N.A. may be discharged, by operation of law, Bank of America, N.A. has retained the ability to enforce its rights against the property securing the loan should there be a default.

10

Unlike the home mortgage statement however, the language in the home equity statement is preceded by the heading: "If You Are Currently a Debtor in a Bankruptcy." If we were to strain and excuse a consumer who declines altogether to read the message under the heading because she had already been discharged and thus is no longer currently in bankruptcy—and if this monthly statement had to be evaluated in isolation—this home equity monthly statement might have given us some pause about the extent to which a least sophisticated consumer could have been misled.

However, we need not make that determination here because, as we have previously discussed, the home equity statement was far from the only available source of information. The least sophisticated consumer in Helman's position necessarily would have had at least the following knowledge: that she had been through the bankruptcy process and received a discharge; that she had no personal liability on the home mortgage; and that the debt had been discharged but that the bank could still enforce its mortgage. Helman was receiving this information every month in the form of the home mortgage statement. Thus, in order to believe that she was personally liable for these debts, Helman would have had to conclude not only that the language of the home equity statement did not apply to her since she was no longer "currently a debtor in bankruptcy," but that everything else she had been told no longer applied to her either. Such a conclusion—that a single

11

potentially ambiguous communication would override a series of clear and unambiguous communications to the contrary—is exactly the type of "bizarre or idiosyncratic interpretation of collection notices" to which we have refused to give protection even under the least sophisticated consumer standard. We likewise decline to do so here.

Having decided that a least sophisticated consumer could not have been misled by these notices, we have no trouble concluding that Helman's negligent misrepresentation and fraudulent inducement claims were also correctly dismissed. Both of these actions require—as one of their elements—reliance on the part of the plaintiff. See, e.g., Gilchrist Timber Co. v. ITT Rayonier, Inc., 127 F.3d 1390, 1393 (11th Cir. 1997) (negligent misrepresentation); Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (fraudulent inducement).[5] Under Florida law, "a recipient may rely on the truth of a representation . . . unless he knows the representation to be false or its falsity is obvious to him." Butler, 44 So. 3d at 105. As we have already detailed, Helman knew that her personal liability had been discharged and even the least sophisticated consumer would not have been misled by BANA's

---

[5] In the context of negligent misrepresentation, the plaintiff's reliance must also have been justifiable. See Gilchrist Timber, 127 F.3d at 1393. Helman correctly notes that mere reliance—not justifiable reliance—is sufficient to state a claim for fraudulent inducement under Florida law. See Butler, 44 So. 3d at 105.

12

actions. Having been so informed, Helman would have known any representations of personal liability to be obviously false and would not have been entitled to rely on them. Accordingly, the district court correctly dismissed these two claims.

## III.    Conclusion

Given that BANA is not a debt collector as that term is defined by the FDCPA, that a least sophisticated consumer would not have been misled by the monthly statements, and that Helman cannot state a valid claim for fraudulent inducement or negligent misrepresentation, the district court was correct to dismiss all of the claims with prejudice.[6] Accordingly, the decision is due to be

**AFFIRMED.**

---

[6]    Having affirmed the dismissal of each of the claims on alternative grounds, we need not consider whether the claims are also preempted by the Bankruptcy Code. Additionally, we summarily reject, without the need for further elaboration, any arguments regarding the decision to refer this case to the bankruptcy court. Lastly, Helman clearly failed to put her motion to amend properly in front of the district court, see, e.g., Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."), and "also failed to comply with Federal Rule of Civil Procedure 7(b) when [she] failed to attach a copy of [her] proposed amendment or to describe the substance of [her] proposed amendment," Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009). Any other challenges on appeal are rejected without the need for further discussion.