# Third District Court of Appeal
## State of Florida

Opinion filed March 11, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0586
Lower Tribunal No. 21-14071-CA-01
_____


**Marc Puleo,**
Appellant,

vs.

**Stephan L. Cohen, et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Lisa Walsh, Judge.

Lawson Huck Gonzalez, PLLC, Robert E. Minchin III (Tallahassee), and Paul C. Huck Jr., for appellant.

Boyd Richards Parker Colonnelli, P.L., Frank Colonnelli, Jr., and Yvette R., Lavelle, for appellees Stephan L. Cohen and Old Florida Title Company; Solomon, Cooperman, Recondo, Shapiro, Abril, and Craig B. Shapiro; Douglas H. Stein, P.A., and Douglas H. Stein, for appellee Edmund Irvine.


Before FERNANDEZ, MILLER, and BOKOR, JJ.

MILLER, J.

This appeal arises out of a residential property sale.  Appellant, Marc Puleo, the seller, appeals from final summary judgments rendered in favor of appellees, Stephan L. Cohen and Old Florida Title Company, the closing and escrow agents, and Edmund Irvine, the buyer, on his tort lawsuit.  The gravamen of his claims was that the participants in the transaction conspired to fraudulently induce him to sell his property for less than the listing price by concealing the buyer's identity and plans to redevelop and resell the property.  We affirm the orders under review, save as to fraudulent misrepresentation and conspiracy.[1]

I

In 2019, Puleo sold his Miami Beach residence to Spanish Rose, LLC for $13 million dollars.  Puleo was led to believe that the purchaser was Maria Drummond, who intended to reside in the home with her family.  Consistent with this representation, he agreed to sell the house fully furnished.

---

[1] We summarily affirm the negligence and breach of fiduciary duty claims against Cohen and Old Florida.  See Transp. Eng'g, Inc. v. Cruz, 152 So. 3d 37, 47 (Fla. 5th DCA 2014); SO5 501, LLC v. Metro-Dade Title Co., 109 So. 3d 1192, 1195–96 (Fla. 3d DCA 2013); David S. Kaufman, P.A. v. Moskowitz, 610 So. 2d 642, 643 (Fla. 3d DCA 1992); The Fla. Bar v. Marrero, 157 So. 3d 1020, 1024–25 (Fla. 2015); Adams v. Chenowith, 349 So. 2d 230, 231 (Fla. 4th DCA 1977).

2

In reality, Drummond was a straw buyer. Irvine, a sophisticated real estate developer and investor and Drummond's long-term domestic partner, forged Drummond's name on the real estate purchase contract. He did not intend to live in the property but rather planned to demolish the residence and "flip" the real estate.

Shortly before closing, Irvine formed a single member limited liability company, Spanish Rose. He yet again forged Drummond's signature on an assignment, transferring her purchase rights to Spanish Rose. Because the contract contained a free assignability clause, Irvine was not required to procure a countersignature from Puleo.

Less than two weeks before closing, Puleo received copies of the title commitment and warranty deed reflecting the assignment to Spanish Rose. Two days before closing, Puleo was provided with a draft closing statement identifying Irvine, for the first time, as the "authorized member" of Spanish Rose.

The closing proceeded, as scheduled. Two months after closing, Spanish Rose relisted the property, first for $16,495,000 and then for nearly $20 million. The property resold in less than a year for $15,977,700.

After learning of the resale, Puleo brought suit against the parties and professionals involved in the transaction. As material to these proceedings,

3

his second amended complaint alleged fraud claims against the real estate brokers, including Julian Johnston (the "Johnston Defendants"). The defendants were joined in a civil conspiracy count.[2]

The fraud and conspiracy claims were predicated on the fact that the parties materially misrepresented both the true identity of the buyer and intended use of the property. Puleo sought $4,490,000 in damages, alleging that had he known that Irvine intended to redevelop and immediately resell the property, he would not have reduced his $18 million listing price.

All defendants moved for summary judgment. The trial court granted partial summary judgment for the Johnston Defendants on the fraud and conspiracy claims, finding unequivocal evidence of misrepresentation, but an insufficient showing of justifiable reliance, materiality, and damages. As the court reasoned, because the foundational fraud tort failed, summary judgment as to conspiracy was proper. Puleo subsequently settled the remaining count with the Johnston Defendants and filed a voluntary dismissal.

---

[2] Puleo dismissed several defendants after he filed suit. His claims against his own attorneys, Eric A. Jacobs and Eric A. Jacobs, P.A., were dismissed and affirmed on appeal. See Puleo v. Jacobs, 374 So. 3d 86 (Fla. 3d DCA 2022). He voluntarily dismissed his appeals against Caterina Gomez and Gomez, LLC, after he filed the notice of appeal here.

4

Applying the same rationale, the trial court granted summary judgment on the remaining conspiracy counts. Puleo unsuccessfully moved for rehearing. This appeal ensued.

## II

### A

We review an order granting final summary judgment de novo. <u>Am. Auto. Ins. Co. v. FDH Infrastructure Servs., LLC</u>, 364 So. 3d 1082, 1083 (Fla. 3d DCA 2023) (citing <u>Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000)). The trial court may grant summary judgment if the moving party demonstrates there is no genuine issue of material fact and further entitlement to judgment as a matter of law. Fla. R. Civ. P. 1.510(a). Hand-in-hand with this principle is that "the correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>In re Amends. to Fla. Rule of Civ. Proc. 1.510</u>, 317 So. 3d 72, 75 (Fla. 2021) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

### B

"In fraud cases, summary judgment is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge."

5

Cohen v. Kravit Est. Buyers, Inc., 843 So. 2d 989, 991 (Fla. 4th DCA 2003). Reciting this adage and invoking the seminal case of Butler v. Yusem, 44 So. 3d 102 (Fla. 2010), Puleo first contends that the defendants led the trial court into error by requiring him to adduce evidence of justifiable reliance, rather than mere reliance, to overcome summary judgment on his fraudulent misrepresentation claim.

In Butler, the Florida Supreme Court shunned this requirement, clarifying that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." Butler, 44 So. 3d at 105. This element is not required because "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." Id. (quoting Besett v. Basnett, 389 So. 2d 995, 998 (Fla. 1980)). As the Florida Supreme Court further explained, "the policy behind our holding . . . is to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." Id. (quoting Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 336–37 (Fla. 1997)).

Under Butler, fraudulent misrepresentation is instead comprised of four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that

6

the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Id. (quoting Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985)).

Here, Puleo claimed that Irvine, aided by the Johnston Defendants, actively and intentionally engaged in an ongoing deception to procure the property at a discounted price. He further claimed he rejected considerably higher offers because he believed that Drummond was purchasing the property with the intent to reside there with her family.

By law, Puleo was entitled to rely on the misrepresentations and had no duty to inquire further. See Besett, 389 So. 2d at 998 ("[A] recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him."). By the time he was on constructive notice that Spanish Rose had acquired the purchase agreement, unilateral cancellation under the contract would have exposed him to a specific performance lawsuit and attorney's fees. Moreover, this limited record yields no indication he was ever placed on notice that the intended use was redevelopment and resale. Under these circumstances, a reasonable jury could find that Puleo relied on the representations to his detriment. See Butler, 44 So. 3d at 105.

7

The after-acquired mortgage appraisals do not vary this conclusion. At best, they injected a factual dispute into the record as to the proper measure of any damages. Because the foundational tort is viable and there was record evidence to support the remaining elements of conspiracy, we summarily reverse the conspiracy count. In so doing, we note that Puleo's settlement with the Johnson Defendants does not bar the conspiracy action against the other alleged co-conspirators. See Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) ("Each coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" (quoting Donofrio v. Matassini, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987))); see also Sec. Pro., Inc. By and Through Paikin v. Segall, 685 So. 2d 1381, 1383 (Fla. 4th DCA 1997) ("As a general rule, parties that are not included in a stipulation for settlement cannot be bound by its provisions."); O'Neill v. Scher, 997 So. 2d 1205, 1207 (Fla. 3d DCA 2008) (noting that a release must "accurately reflect the release of interests and/or claims" agreed upon in a settlement agreement); Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So. 2d 306, 315 (Fla. 2000) ("[E]nforcement is premised upon the assumption that the released claims

8

are those that were contemplated by the agreement.").  Accordingly, we affirm in part, reverse in part, and remand.

Affirmed in part; reversed in part; remanded.