389 So.2d 995 (1980)
Merle E. BESETT, Irene D. Besett, and C. Joe Czerwinski, Petitioners,
v.
Robert K. BASNETT and Barbara L. Basnett, Respondents.
No. 57201.
Supreme Court of Florida.
October 23, 1980.
Rehearing Denied December 22, 1980.
*996 C. Guy Batsel and Leo Wotitzky of Wotitzky, Wotitzky, Johnson, Mandell & Batsel, Punta Gorda, and Charles J. Cheves, of Cheves & Rapkin, Venice, for petitioners.
Michael R. Karp of Wood, Whitesell & Karp, Sarasota, for respondents.
ALDERMAN, Justice.
The petitioners, Mr. and Mrs. Besett and Mr. Czerwinski, the appellees in the district court and the defendants in the trial court, seek review of the district court's decision in Basnett v. Besett, 371 So.2d 705 (Fla.2d DCA 1979). In this case, the district court found that a fraudulent misrepresentation complaint stated a cause of action even though the plaintiffs failed to allege that they had investigated the truth of the defendants' misrepresentations. We accept jurisdiction on the basis of conflict with Potakar v. Hurtak, 82 So.2d 502 (Fla. 1955), approve the decision of the district court, and hold that the plaintiffs' fraudulent misrepresentation complaint does state a cause of action.
The respondents, Mr. and Mrs. Basnett, the appellants in the district court and the plaintiffs in the trial court, were Connecticut residents interested in resettling in Florida. They obtained information about Redfish Lodge from its owners, the Besetts, and the Besetts' real estate broker, Czerwinski. As prospective buyers, they made several trips to Florida to inspect the lodge. They allege that the sellers misrepresented the size of the land offered for sale to be approximately 5.5 acres, when, in fact, the sellers knew it to be only 1.44 acres. They allege that the sellers knowingly misrepresented the amount of the lodge's business for 1976 to be $88,000 and that the roof on a building was brand new, when, in fact, the business income was substantially lower and the roof was not new and leaked. They also allege the defendants misrepresented to them the availability of additional land for expansion. Relying on these misrepresentations, which they allege were made to induce them to buy, they bought the lodge and the land.
Upon the motion of the defendants, the trial court, relying on Potakar v. Hurtak, dismissed the complaint for failing to state a cause of action. The district court reversed on the authority of its decision in Upledger v. Vilanor, Inc., 369 So.2d 427 (Fla.2d DCA 1979), cert. denied, 378 So.2d 350 (Fla. 1979). These cases represent the two divergent lines of authority on this issue which have developed in Florida.
Potakar v. Hurtak was also a fraudulent misrepresentation action. Potakar alleged that he had asked Hurtak if the previous lessees of a restaurant had made a profit, and Hurtak replied they had, even though he knew the previous lessees had lost money for several years. Potakar alleged the misrepresentations were made to defraud, deceive, and influence him to lease the business. In affirming the trial court's dismissal of the complaint for failure to state a cause of action, the court observed that there were "no allegations as to the past profits, no showing as to the right of the plaintiff to rely on past statement, no fact stated as to the diligence on the plaintiff's part in investigating, or failing to investigate such facts, or how he was prevented from investigating the past profits of the said business." 82 So.2d at 503. The Court looked to 23 Am.Jur., Fraud and Deceit § 155, at 960-61 (1940), for a statement of the general rule that "a person to whom false representations have been made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence." 82 So.2d at 503. The Court concluded that Potakar's complaint did not state a cause of action.
*997 The district court, in Upledger, reached a different result. In that case, Upledger, who was purchasing an apartment building from Vilanor, relied upon misrepresentations made by Vilanor concerning the amounts for which the apartments rented and the duration of the leases. Upledger admitted that he did not undertake an independent investigation, and he claimed that he would not have completed the purchase if he had known the true facts. In reversing the trial court's dismissal of Upledger's complaint, the district court, recognizing that there are conflicting lines of authority, concluded:
[W]hen a specific false statement is knowingly made and reasonably relied upon, we choose to align ourselves with the growing body of authorities which holds that the representee is not precluded from recovery simply because he failed to make an independent investigation of the veracity of the statement... .
369 So.2d at 430.
The district court, we believe, made the correct choice. A person guilty of fraudulent misrepresentation should not be permitted to hide behind the doctrine of caveat emptor. The principle of law which we adopt is expressed in Sections 540 and 541 of Restatement (Second) of Torts (1976) as follows:
§ 540. Duty to Investigate.
The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.
Comment:
a. The rule stated in this Section applies not only when an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction, but also when it could be made without any considerable trouble or expense. Thus it is no defense to one who has made a fraudulent statement about his financial position that his offer to submit his books to examination is rejected. On the other hand, if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious under the rule stated in § 541.
b. The rule stated in this Section is applicable even though the fact that is fraudulently represented is required to be recorded and is in fact recorded. The recording acts are not intended as a protection for fraudulent liars. Their purpose is to afford a protection to persons who buy a recorded title against those who, having obtained a paper title, have failed to record it. The purpose of the statutes is fully accomplished without giving them a collateral effect that protects those who make fraudulent misrepresentations from liability.
§ 541. Representation Known to Be or Obviously False.
The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.
Comment:
a. Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.
*998 A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the two-fraud and negligence-negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter. As the Michigan Supreme Court said many years ago:
There may be good, prudential reasons why, when I am selling you a piece of land, or a mortgage, you should not rely upon my statement of the facts of the title, but if I have made that statement for the fraudulent purpose of inducing you to purchase, and you have in good faith made the purchase in reliance upon its truth, instead of making the examination for yourself, it does not lie with me to say to you, "It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told the truth; and because you trusted to my word, when you ought to have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without a remedy."
Bristol v. Braidwood, 28 Mich. 191, 196 (1873).
We hold that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him. We recede from Potakar v. Hurtak insofar as it is inconsistent with our present holding, and we disapprove all other decisions inconsistent with our holding in this case.
As was the case in Upledger, the petitioners in this case, as owners of the property being sold, had superior knowledge of its size, condition, and business income. As prospective purchasers, the respondents were justified in relying upon the representations that were made to them although they might have ascertained the falsity of the representations had they made an investigation. From the complaint, it does not appear that the respondents knew that the alleged misrepresentations were false, nor can we conclude from that complaint as a matter of law that the misrepresentations were obviously false.
Accordingly, we approve the decision of the district court.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND and McDONALD, JJ., concur.
ADKINS, J., dissents.