813 So.2d 91 (2002)
M/I SCHOTTENSTEIN HOMES, INC., etc., Petitioner,
v.
Nasad AZAM, et al., Respondents.
No. SC00-1582.
Supreme Court of Florida.
March 7, 2002.
Diran V. Seropian of Peterson, Bernard, Vandenberg, Zei, Geisler & Martin, West Palm Beach, FL, for Petitioner.
*92 S. Tracy Long of Barry G. Roderman & Associates, P.A., Fort Lauderdale, FL, for Respondents.
LEWIS, J.
We have for review Azam v. M/I Schottenstein Homes, Inc., 761 So.2d 1195 (Fla. 4th DCA 2000), which expressly and directly conflicts with a portion of the decision in Pressman v. Wolf, 732 So.2d 356 (Fla. 3d DCA), review denied, 744 So.2d 459 (Fla.1999). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

Facts and Procedural History
On May 28, 1999, Nasad and Safeeia Azam, along with seven other plaintiff co-owners or individual landowners ("respondents" or "the purchasers"), filed an action against M/I Schottenstein Homes, Inc. ("petitioner" or "the seller"), an Ohio corporation qualified to do business in Florida. The complaint contained three counts and asserted that in 1989, Palm Beach County prepared or had prepared a site plan to build a school on a parcel of land approximately five hundred feet from the location of property purchased by the respondents. It was alleged that such plan was on file at the offices of Palm Beach County and that the seller actually knew of this plan.[1] The purchasers further asserted that
the Defendant, its employees, agents and/or representatives, despite actual knowledge of the Palm Beach County Site Plan, represented to the Plaintiffs, for the purpose of inducing them to purchase the real estate ... that the parcel of land that was located approximately 500 feet from the location of the Brindlewood Development in Wellington, Palm Beach County, Florida, was a natural preserve, and that it would be left permanently in that state.
Finally, the purchasers alleged that they purchased their homes in reliance upon the false representations of Schottenstein. When the purchasers discovered that the parcel was not to be a "natural preserve," they filed this action for fraud in the inducement of their real estate contracts, recision of the contracts, and negligent misrepresentation with respect to the contracts.
Petitioner filed a motion to dismiss the complaint with prejudice based in part upon the existence of the school site plan in the public records of Palm Beach County. While the site plan drawing may have been clearly contained within the public record,[2] the pleadings are entirely unclear as to where this site plan was physically located. The motion asserted that "[e]ach of the plaintiffs are charged with constructive notice of this site plan," and thus any representations regarding the school parcel could not be relied upon. The circuit court granted the motion and dismissed the action on the basis of the following statement contained in the text of Pressman v. Wolf: "Statements concerning public record cannot form the basis for a claim of actionable fraud." 732 So.2d at 361. Respondents sought review in the district court of appeal.
On appeal, the Fourth District affirmed the circuit court's dismissal in part and reversed it in part. See Azam, 761 So.2d at 1196. The district court affirmed the trial court's dismissal of the negligence *93 and recision counts; however, it disagreed with the trial court's determination with regard to the fraud claim. Id. The court held that respondents had alleged sufficient facts to support a cause of action for fraud in the inducement against Schottenstein, notwithstanding the presence of the site plan in the Palm Beach County public records. Id. Specifically stating, "We disagree with the broad prohibition in Pressman," the court held that whether a fraud claim is properly asserted with respect to matters contained in the public record is a factual question that should be determined on a case-by-case basis. Id. Petitioner seeks review of the holding of the Fourth District Court of Appeal, which requires a case-by-case analysis under such circumstances.

Analysis
There are at least three decisions of this Court which impact the instant case.[3] As the result reached here is derived directly from these three cases, a brief review of each reveals the principals which guide our decision today.
In Besett v. Basnett, 389 So.2d 995 (Fla. 1980), this Court adopted sections 540 and 541 of the Restatement (Second) of Torts (1977). In so doing, we held that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." Id. at 997 (quoting Restatement § 540). Upon cursory inspection, one would assume that this statement of section 540 of the Restatement resolves the instant case. Also important here, however, is the text of comment a to section 540, which contains an important exception. It provides, "On the other hand, if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious under the rule stated in section 541." Id. (quoting Restatement § 540 cmt. a). Section 541 of the Restatement goes further to state: "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Id. (quoting Restatement § 540). Thus, where one has an opportunity to make a cursory examination or investigation and does not do so, he cannot recover. See id.
In addition to adopting sections 540 and 541 of the Restatement and explaining their proper application, this Court held that the plaintiffs there had stated a viable cause of action for fraudulent misrepresentation. See id. Poignantly, the purchasers alleged as part of the fraud claims that the seller had misrepresented the size of the purchased parcel during the parties' negotiations. See id. at 996. Clearly, the size of a parcel of land would have been contained in the public record. The court then proceeded to make clear that when faced with a choice between a fraudulently misrepresenting seller and a negligently inattentive purchaser, it would prefer to favor the negligent conduct as less objectionable than fraud. See id. at 998.
In Johnson v. Davis, this Court extended the Besett reasoning from affirmative misrepresentations to the arena of nondisclosure of material facts. The court very clearly stated that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Johnson v. Davis, 480 So.2d 625, 629 (Fla.1985).
Finally, in Gilchrist Timber Co. v. ITT Rayonier, this Court held that one may be *94 held liable for negligent misrepresentation when the recipient of the misstatement is able to establish the cause of action as set forth in section 552 of the Restatement (Second) of Torts (1977). In addition, the court held that the doctrine of comparative negligence was applicable to the action. See Gilchrist Timber Co. v. ITT Rayonier, 696 So.2d 334, 337-38 (Fla.1997).
The significant impact of the decision in Gilchrist for the instant case, however, is the reaffirmation of both Besett and Johnson. The court initiated its analysis by stating "the policy behind our holding in Besett is to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." Gilchrist, 696 So.2d 334 at 336-37. In addition, it is important to note that the information that was negligently misrepresented in Gilchrist was the zoning designation for a large parcel, a matter that was within the public records. Id. at 335. Again, when given the opportunity, this Court refused to preclude an action for negligent misrepresentation based exclusively upon the presence of the information allegedly misrepresented in the public record.
Against the backdrop of Besett, Johnson, and Gilchrist, in 1999 the Third District Court of Appeal reached its decision in Pressman v. Wolf, 732 So.2d 356 (Fla. 3d DCA 1999). Within its opinion, the Pressman court stated the following rule: "Statements concerning public record cannot form the basis for a claim of actionable fraud." 732 So.2d at 361. When faced with a trial court ruling based upon the text of the Pressman decision, the Fourth District below stated succinctly,
We disagree with the broad prohibition in Pressman. Rather, whether a fraud claim may lie with respect to statements about matters outside the property sold, the status of which matters can be determined from a public record, is a factual question.
761 So.2d at 1196. There is no question that a conflict exists between these two decisions of the district courts of appeal.
When due consideration is given to the previous decisions of this Court, as well as to practical realities in real estate transactions, we must approve the decision of the Fourth District below and disapprove the broad blanket statement of the Third District in Pressman. Clearly, the question of whether a cause of action for fraudulent misrepresentation exists in the instant case is one of fact that cannot be resolved based exclusively upon the parties' pleadings. The complaint states a cause of action which is not negated by the attached exhibit. While there may be some unanswered questions, such as some uncertainty as to all aspects of the matters in the public information regarding the Palm Beach County parcel, what the exact statements of Schottenstein's agents were, and whether the purchasers' reliance was justifiable under the totality of the circumstances, a cause of action has been stated. For these reasons, we hold that the question of whether a cause of action for fraudulent misrepresentation exists where the putatively misrepresented information is contained in the public record is one of fact that should not be resolved through a motion to dismiss and the use of a bright-line rule of preclusion.
In pursuing this case-by-case consideration of the facts, courts should be mindful of the type of information that the purchaser asserts was fraudulently misrepresented. The question, to refer back to this Court's decision in Besett, is whether the recipient of the misrepresentation is "justified in relying upon its truth." 389 So.2d at 997. For if the recipient "knows that it [the statement] is false or its falsity is obvious to him," his reliance is improper, *95 and there can be no cause of action for fraudulent misrepresentation. Id. Thus, this factual examination is indeed a consideration of the totality of the circumstances surrounding the type of information, the nature of the communication between the parties, and the relative positions of the parties.
In addition, we reach the decision in this case with the understanding that where recorded information which is clearly contained in the chain of title of the parcel purchased is asserted as the basis for an action for misrepresentation by the purchaser, a distinct and very different matter than the situation discussed herein exists. Knowledge of clearly revealed information from recorded documents contained in the records constituting a parcel's chain of title is properly imputed to a purchasing party, based upon the fact that an examination of these documents prior to a transfer of the real property is entirely expected. See Mercer v. Keynton, 99 Fla. 914, 127 So. 859, 861 (1930); Field Properties, Inc. v. Fritz, 315 So.2d 101, 103 (Fla. 2d DCA 1975); Hagan v. Sabal Palms, Inc., 186 So.2d 302, 311-12 (Fla. 2d DCA 1966); Tri-County Produce Distribs., Inc. v. Northeast Prod. Credit Ass'n, 160 So.2d 46, 51 (Fla. 1st DCA 1963); Maule Indus., Inc. v. Sheffield Steel Prods., Inc., 105 So.2d 798, 801 (Fla. 3d DCA 1958). For this reason, it may often be the case that where fraud regarding information contained in and clearly revealed through a parcel's chain of title is alleged, reliance is not justified and a cause of action will not exist. It is also plain that there may be situations in which a party's allegations of fraudulent misrepresentation fail to state a cause of action. Where the pleadings of the parties make it evident that reliance on the part of a purchaser was not justified as a matter of law, a trial court may certainly be correct in ruling as a matter of law that no cause of action exists.
The concurrence is unduly concerned in its statement that today's decision "could signal a return to caveat emptor." Concurring op. at 98. This Court expressly recognized in Besett that there may be cases in which the falsity of a statement is obvious, and under those circumstances no cause of action could be stated. See Besett, 389 So.2d at 997 ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.") (quoting Restatement § 541). This situation may exist when the presence of information within a parcel's chain of title renders certain misrepresentations so obviously false that reliance thereupon would not be justified. In this situation, it would be entirely proper for a trial court to rule against the plaintiff as a matter of law.
The concurrence's argument that Besett implicitly dictates that actions based upon allegations of misrepresentation can never be precluded relies entirely upon the premise that the Besett court allowed a cause of action to proceed, even though one of the claims alleged misrepresentation of the parcel's size. See Concurring op. at 98. This argument loses all persuasive power, however, when one realizes that parcel surveys and drawings are not always part of real estate closings, nor are they recorded in the usual transaction. Thus, these documents may not be part of the chain of title for the majority of real property parcels. Upon analysis, it becomes clear that the concurrence would extend Besett to establish a bright line rule that misrepresentation claims may never be dismissed as a matter of law-an extreme rule of law that this Court has never approached. In accordance with Besett, we simply hold that the trial court must always evaluate the facts of the situation *96 before it, and resolve the issues on a case-by-case fashion. The concurrence's proposed rule is directly contrary to this principle.
Finally, this court is mindful that our decision today may pose concerns with regard to the stability of real estate transactions.[4] We are confident, however, that our determination today strikes the proper balance between assuring the constancy and stability of real property transactions and protection of purchasers from tortious actions by sellers. Our decisions in Besett and Gilchrist demand no less, and any decision other than that made herein would require us to recede from the holdings of these two leading cases. As we find both the holding and underlying reasoning of these cases to be just as well founded and cogent as ever, we are not prepared to recede from them. In fact, we reaffirm the commitment of our law to prohibit "one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." Gilchrist Timber Co., 696 So.2d at 336-37.

Conclusion
We specifically approve the holding of the court below that under these circumstances whether a cause of action for fraudulent misrepresentation exists regarding information contained in a public record presents a question of fact. See Azam, 761 So.2d 1195. As such decision is in direct conflict with the decision of the Third District Court of Appeal to the extent it announced the broad statement that, "Statements concerning public record cannot form the basis for a claim of actionable fraud," 732 So.2d at 361, the Third District's view cannot stand. We hereby disapprove this broad statement contained in the Third District's Pressman v. Wolf opinion.
It is so ordered.
WELLS, C.J., HARDING, and QUINCE, JJ., concur.
PARIENTE, J., concurs in result only with an opinion, in which SHAW, J., concurs.
ANSTEAD, J., concurs in result only.
PARIENTE, J., concurring in result only.
I concur in result only because I do not agree with the majority's broad statement regarding the chain of title:
Knowledge of clearly revealed information from recorded documents contained in the records constituting a parcel's chain of title is properly imputed to a purchasing party.... For this reason, it may often be the case that where fraud regarding information contained in and clearly revealed through a parcel's chain of title is alleged, reliance is not justified and a cause of action will not exist.
Majority. op. at 95 (emphasis added).
Because the public record in this case was a matter outside the property being sold, I regard the majority's chain of title discussion commencing on page 95 as dicta and thus unnecessary to the resolution of the issues in this case.[5] Moreover, the fact *97 that a purchaser may be charged with constructive knowledge of information within the chain of title is a different inquiry from whether the purchaser actually knows of the falsity of the representation or whether the falsity is obvious to the purchaser, which is the operative inquiry in Besett v. Basnett, 389 So.2d 995, 998 (Fla.1980).[6]
We stated in Besett that "[a] person guilty of fraudulent misrepresentation should not be permitted to hide behind the doctrine of caveat emptor." Id. at 997. We further quoted with approval from section 540 of Restatement (Second) of Torts, comment a (1976): "The rule stated in this Section applies not only when an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction, but also when it could be made without any considerable trouble or expense." Id. As between the seller who was guilty of fraud and the purchaser who may have been negligent, we determined:
A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the twofraud and negligence negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter. As the Michigan Supreme Court said many years ago:
There may be good, prudential reasons why, when I am selling you a piece of land, or a mortgage, you should not rely upon my statement of the facts of the title, but if I have made that statement for the fraudulent purpose of inducing you to purchase, and you have in good faith made the purchase in reliance upon its truth, instead of making the examination for yourself, it does not lie with me to say to you, "It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told the truth; and because you trusted to my word, when you ought to have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without a remedy."
Bristol v. Braidwood, 28 Mich. 191, 196 (1873).
We hold that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.
Besett, 389 So.2d at 998. Indeed, Bristol, the case quoted with approval by Besett, is a chain of title case.
*98 I thus am concerned with the majority's dicta that singles out the chain of title for discussion when that issue is not before us in this case. Even though the majority still embraces our decision in Besett, 389 So.2d at 998, I am concerned that in its broad sweep, the majority's statement could signal a return to caveat emptor. One of the misrepresentations in Besett, the size of the land offered for sale, id. at 996, is an item that may be contained in a chain of title. Certainly the size of a parcel, if not in the chain of title, would be contained in a survey that would be part of the real estate transaction. There is nothing inherent in the public record pertaining to a parcel's chain of title, as opposed to the public record pertaining to the zoning of the parcel, as in Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 336 (Fla.1997), or the public record pertaining to the size of the parcel, as in Besett, that necessitates carving out this public record exception for the chain of title. Indeed, in Besett we broadly held, "[A] recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." 389 So.2d at 998.
Although Besett recognizes the possibility that there may be cases appropriate for resolution as a matter of law where the uncontroverted facts establish that the falsity of the statements are obvious, the resolution of that question must be on a case-by-case basis. Certainly the fact that the information is within the property's chain of title may be one factor that the court can take into consideration in determining whether as a matter of law the falsity of the affirmative misrepresentation was known to the purchaser or was obvious to the purchaser. However, as Judge Gross noted in his special concurrence in Azam v. M/I Schottenstein Homes, Inc., 761 So.2d 1195, 1197 (Fla. 4th DCA 2000):
Whether a fraudulent statement about a public record is actionable is a question of fact. The law should not expect every potential homeowner in every case to root around the bowels of the courthouse for those surveys, plats, and records which would verify or contradict a seller's representations about the property.
Finally, because this case involves the purchaser's right to sue the seller for damages resulting from the wrongful conduct, there should be no concern over the stability of real estate transactions. See majority op. at 96. Rather, creating the possibility of a broad exception for information within the public record could have the effect of shielding sellers from their wrongdoing in making blatant misrepresentations of material fact to unsophisticated buyers regarding information within the chain of title. I am certain that the majority does not intend this result, but I am concerned that the dicta regarding the chain of title could be misconstrued to create this result. For all these reasons, I concur in result only.
SHAW, J., concurs.
NOTES
[1] The "site plan" was attached to the respondents' complaint. The exhibit facially contained markings that may generally be associated with papers contained in building and zoning related files; however, it bears no public recording information.
[2] We have an extremely expansive definition in this state of a "public record." See ch. 119, Fla. Stat. (2000) (the "Public Records Act").
[3] Besett v. Basnett, 389 So.2d 995 (Fla.1980), Johnson v. Davis, 480 So.2d 625 (Fla.1985), and Gilchrist Timber Co. v. ITT Rayonier, 696 So.2d 334 (Fla.1997).
[4] It is unfortunate that the concurrence does not perceive that the stability of real estate transactions, which is buttressed by our recording statutes, would be compromised by authorizing legal actions alleging misrepresentation to proceed, even when well-documented written and recorded matters render the material facts blatantly obvious, contrary to the principles approved in Besett.
[5] Although raising the possibility of an exception for matters within the chain of title, the majority offers no guidance on when it "may often" be the case that reliance upon a misrepresentation regarding information in a chain of title may be unjustified so as to support a trial court ruling as a matter of law. See majority op. at 95.
[6] Furthermore, the cases cited by the majority do not support its proposition that "where fraud regarding information contained in and clearly revealed through a parcel's chain of title is alleged, reliance is not justified" because "[k]nowledge of clearly revealed information from recorded documents contained in the records constituting a parcel's chain of title is properly imputed to a purchasing party." Majority op. at 95. None of the cases cited by the majority, all of which predate our opinion in Besett, involve the right of a purchaser to bring a cause of action against a seller who has made an affirmative misrepresentation to a purchaser on a material matter in order to induce the purchaser to buy the property. Rather, these cases deal generally with the rights of innocent third parties to enforce restrictive covenants that are deemed to run with the land against a subsequent purchaser.