GERBER, J.
In these consolidated foreclosure cases, the borrower and related parties primarily appeal from an order dismissing the borrower’s counterclaim and third-party claim for fraud against the bank and the bank’s attorney. The borrower argues that the circuit court erred by concluding that the fraud claim was barred under M/I Schottenstein Homes, Inc. v. Azam, 813 So.2d 91 (Fla.2002). We agree with the borrower and reverse in all cases.
We state the facts in favor of the borrower as pled in the four corners of its fraud claim. See Scarfone v. P.C.-Plantation, LLLP, 59 So.3d 371, 372 (Fla. 4th DCA 2011) (“This court’s review is limited to the four corners of the complaint, all facts must be accepted as true and all reasonable inferences must be drawn in favor of the pleader.”). Our review is de novo. Id.
In 2003, the borrower sought a loan from the bank to purchase a performing arts playhouse. The bank required the borrower to use the bank’s attorney to perform the title work in connection with the transaction. The borrower alleged that it dealt with the bank and the bank’s attorney during prior transactions and had no reason to believe that the bank or the bank’s attorney would be anything but forthright in this transaction.
The borrower allegedly communicated to the bank and the bank’s attorney that the borrower had no intention of purchasing the property to operate the playhouse, but instead was purchasing the property for development and investment purposes. The bank and the bank’s attorney, however, knew from the title work which the bank’s attorney performed for the transaction that the city’s original deed of the *1195 property contained a restrictive covenant requiring that the property be used as a playhouse or else title would revert back to the city.
The borrower alleged that, despite the bank’s and the bank’s attorney’s knowledge of the restrictive covenant, the bank’s attorney informed the borrower that the property could be used for development and investment purposes and that the property was not limited to use as a playhouse. In reliance on that representation, the borrower closed on the property.
Three years later, in 2006, the borrower entered into a contract to sell the property to a buyer. The city, however, filed a lawsuit to enjoin the sale based on the restrictive covenant. The borrower alleged that it first learned of the restrictive covenant when the city filed the lawsuit. Because of the lawsuit, the buyer refused to close, and the borrower lost the profit of the sale. The profit allegedly would have provided the borrower with sufficient funds to pay off the loan on the playhouse property as well as another loan which the borrower had with the bank for which the borrower had mortgaged the playhouse property and other properties.
In 2008, the borrower defaulted on the loan for the playhouse property and the loan covering the other mortgaged properties. The bank filed separate foreclosure actions against the borrower as to the playhouse property and the other mortgaged properties.
In response to the foreclosure action as to the playhouse property, the borrower filed a counterclaim and third-party claim for fraud against the bank and the bank’s attorney. In addition to the facts alleged above, the borrower alleged that: (1) the bank and the bank’s attorney misrepresented that the property could be used for development and investment purposes with the intention of inducing the borrower to close on the property; (2) the borrower relied on that misrepresentation; (3) the borrower’s reliance under all of the circumstances was reasonable; and (4) the borrower sustained damages as the proximate result of the misrepresentation. The borrower’s answer in each foreclosure action also contained an affirmative defense alleging that the borrower was entitled to a setoff by virtue of the matters set forth in the fraud claim.
The bank and the bank’s attorney filed separate motions to dismiss the fraud claim. Both motions argued that because the restrictive covenant was a matter of the public record in the playhouse property’s chain of title, knowledge of the restrictive covenant was imputed to the borrower. The bank’s attorney’s motion quoted the following sentence from Schottenstein: “Knowledge of clearly revealed information from recorded documents contained in the records constituting a parcel’s chain of title is properly imputed to a purchasing party, based upon the fact that an examination of these documents prior to a transfer of the real property is entirely expected.” 813 So.2d at 95.
The circuit court granted the motions. The court’s order quoted the same sentence from Schottenstein which the bank’s attorney quoted in his motion to dismiss. Because the fraud claim was the only action involving the bank’s attorney, the court entered a final judgment in favor of the bank’s attorney shortly thereafter.
The borrower filed a motion for rehearing. The borrower argued that the circuit court’s reading of Schottenstein was contrary to the supreme court’s holding. In support of that argument, the borrower quoted the following other paragraphs from Schottenstein:
... [W]e hold that the question of whether a cause of action for fraudulent misrepresentation exists where the putatively misrepresented information is *1196 contained in the public record is one of fact that should not be resolved through a motion to dismiss and the use of a bright-line rule of preclusion.
In pursuing this case-by-case consideration of the facts, courts should be mindful of the type of information that the purchaser asserts was fraudulently misrepresented. The question ... is whether the recipient of the misrepresentation is justified in relying upon its truth. For if the recipient knows that it [the statement] is false or its falsity is obvious to him, his reliance is improper, and there can be no cause of action for fraudulent misrepresentation. Thus, this factual examination is indeed a consideration of the totality of the circumstances surrounding the type of information, the nature of the communication between the parties, and the relative positions of the parties.
Id. at 94-95 (internal citations and quotations omitted).
The circuit court denied the borrower’s motion for rehearing. The court’s order referred to the same sentence from Schot-tenstein which it had quoted in the orders granting the motions to dismiss.
The borrower at that point appealed the final judgment in favor of the bank’s attorney. While that appeal was pending, the bank obtained final summary judgments of foreclosure as to the playhouse property and the other mortgaged properties. The borrower then appealed those final judgments. We consolidated the appeals.
The borrower argues that the circuit court erred by concluding that the fraud claim was barred under Schottenstein. The borrower further argues that its setoff defenses were properly alleged in each foreclosure action and that the circuit court therefore erred by entering summary final judgments of foreclosure in each action while the setoff defenses were pending.
We agree with the borrower’s arguments. Our reasoning requires a lengthy examination of Schottenstein in its full context.
In Schottenstein, the plaintiff home purchasers filed an action against the defendant developer. The purchasers asserted that the county prepared a site plan to build a school on a parcel of land near the properties which they purchased. The purchasers alleged that the site plan was on file at the county offices and that the developer knew of the site plan. The purchasers further asserted that the developer, despite knowing of the site plan, represented to them, for the purpose of inducing them to purchase the properties, that the nearby parcel was a natural preserve, and that the parcel would be left permanently in that state. The purchasers also alleged that they purchased their homes in reliance upon the developer’s false representations. When the purchasers discovered that the parcel was not going to be a natural preserve, they sued the developer. The purchasers’ complaint alleged three counts — fraud in the inducement of the contracts, rescission of the contracts, and negligent misrepresentation with respect to the contracts.
The developer filed a motion to dismiss the complaint with prejudice. The developer asserted that the purchasers had constructive notice of the site plan in the county’s public records, and thus they could not rely upon the developer’s representations regarding the parcel. The circuit court granted the motion and dismissed the action on the basis of the following statement contained in Pressman v. Wolf, 732 So.2d 356 (Fla. 3d DCA 1999): “Statements concerning public record cannot form the basis for a claim of actionable fraud.” Id. at 361.
The purchasers appealed to this court. We affirmed the dismissal of the negli *1197 gence and rescission claims, but we reversed the dismissal of the fraud claim. Azam v. M/I Schottenstein Homes, Inc., 761 So.2d 1195 (Fla. 4th DCA 2000). In reaching our decision, we disagreed with the broad prohibition stated in Pressman. Id. at 1196. We instead held that “whether a fraud claim may lie with respect to statements about matters outside the property being sold, the status of which matters can be determined from a public record, is a factual question.” Id. The developer appealed our decision to the supreme court.
The supreme court approved our decision and disapproved the broad prohibition stated in Pressman. In reaching that conclusion, the court first considered its previous decisions which impacted the case, including Besett v. Basnett, 389 So.2d 995 (Fla.1980), and Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334 (Fla. 1997). The court explained that in Besett, it “[made] clear that when faced with a choice between a fraudulently misrepresenting seller and a negligently inattentive purchaser, it would prefer to favor the negligent conduct as less objectionable than fraud.” Schottenstein, 813 So.2d at 93 (citing Besett, 389 So.2d at 998). The court also noted that in Gilchrist, it stated that the policy behind Besett “ ‘is to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing.’ ” Schottenstein, 813 So.2d at 94 (quoting Gilchrist, 696 So.2d at 336-37).
After considering its previous decisions, the court approved our decision and disapproved the broad prohibition stated in Pressman. 813 So.2d at 94. The court reasoned:
Clearly, the question of whether a cause of action for fraudulent misrepresentation exists in the instant case is one of fact that cannot be resolved based exclusively upon the parties’ pleadings. The complaint states a cause of action which is not negated by the attached exhibit. While there may be some unanswered questions, such as ... whether the purchasers’ reliance was justifiable under the totality of the circumstances, a cause of action has been stated. For these reasons, we hold that the question of whether a cause of action for fraudulent misrepresentation exists where the putatively misrepresented information is contained in the public record is one of fact that should not be resolved through a motion to dismiss and the use of a bright-line rule of preclusion.
In pursuing this case-by-case consideration of the facts, courts should be mindful of the type of information that the purchaser asserts was fraudulently misrepresented. The question, to refer back to this Court’s decision in Besett, is whether the recipient of the misrepresentation is justified in relying upon its truth. For if the recipient knows that it [the statement] is false or its falsity is obvious to him, his reliance is improper, and there can be no cause of action for fraudulent misrepresentation. Thus, this factual examination is indeed a consideration of the totality of the circumstances surrounding the type of information, the nature of the communication between the parties, and the relative positions of the parties.
In addition, we reach the decision in this case with the understanding that where recorded information which is clearly contained in the chain of title of the parcel purchased is asserted as the basis for an action for misrepresentation by the purchaser, a distinct and very different matter than the situation discussed herein exists. Knowledge of clearly revealed information from recorded documents contained in the records constituting a parcel’s chain of title is properly imputed to a purchasing *1198 party, based upon the fact that an examination of these documents prior to a transfer of the real property is entirely expected. For this reason, it may often be the case that where fraud regarding information contained in and clearly revealed through a parcel’s chain of title is alleged, reliance is not justified and a cause of action will not exist. It is also plain that there may be situations in which a party’s allegations of fraudulent misrepresentation fail to state a cause of action. Where the pleadings of the parties make it evident that reliance on the part of a purchaser was not justified as a matter of law, a trial court may certainly be correct in ruling as a matter of law that no cause of action exists.
... This Court expressly recognized in Besett that there may be cases in which the falsity of a statement is obvious, and under those circumstances no cause of action could be stated.... This situation may exist when the presence of information within a parcel’s chain of title renders certain misrepresentations so obviously false that reliance thereupon would not be justified. In this situation, it would be entirely proper for a trial court to rule against the plaintiff as a matter of law.
... In accordance with Besett, we simply hold that the trial court must always evaluate the facts of the situation before it, and resolve the issues on a case-by-case fashion.
Id. at 94-96 (emphasis added; internal citations, quotations, and footnotes omitted).
Here, it appears that the bank and the bank’s attorney relied on one sentence from Schottenstein to convince the circuit court that recorded information within a parcel’s chain of title can never form the basis of a claim of actionable fraud. However, our supreme court made no such holding in Schottenstein. While the court pointed out that recorded information contained in the chain of title is “a distinct and very different matter,” id. at 95, the court did not state that such information can never be asserted as the basis for an action for misrepresentation. Rather, the court stated in five different sentences that where fraud regarding information contained in a parcel’s chain of title is alleged, reliance may not be justified and a cause of action may not exist. Id. In other words, the information’s presence within the chain of title is merely a factor to consider and is not dispositive. Thus, the supreme court ultimately held, in accordance with Besett, that a court “must always evaluate the facts of the situation before it, and resolve the issues on a case-by-case fashion.” Id. at 95-96.
Evaluating the facts which the borrower alleged in this case, we conclude that the borrower stated a cause of action for fraud even though the restrictive covenant was contained in borrower’s chain of title. We base our conclusion on the following allegations: (1) the bank required the borrower to use the bank’s attorney to perform the title work in connection with the transaction; (2) the borrower dealt with the bank and the bank’s attorney during prior transactions and had no reason to believe that the bank or the bank’s attorney would be anything but forthright in this transaction; (3) as a result of the title work which the bank’s attorney performed, the bank and the bank’s attorney knew of the restrictive covenant; (4) despite the bank’s and the bank’s attorney’s knowledge of the restrictive covenant, the bank and the bank’s attorney informed the borrower that the property could be used for development and investment purposes; and (5) the borrower suffered damages by acting in reliance on the representation. See Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010) (“[T]here are four elements of fraudulent misrepresentation: (1) a false state *1199 ment concerning a material fact; (2) the representor’s knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation”) (citation, internal quotations, and emphasis omitted).
The borrower’s allegation that the bank required the borrower to use the bank’s attorney to perform the title work may be the most important of these allegations. If the borrower proves that the bank required the borrower to use the bank’s attorney to perform the title work, then the borrower reasonably can argue to the trier of fact that it should not be imputed with knowledge of the restrictive covenant because the bank and the bank’s attorney allegedly misrepresented the results of that title work to the borrower. See Schottenstein, 813 So.2d at 93 (“[W]hen faced with a choice between a fraudulently misrepresenting seller and a negligently inattentive purchaser, [the court] would prefer to favor the negligent conduct as less objectionable than fraud.”) (citing Be-sett, 389 So.2d at 998). However, if the borrower is unable to prove that the bank required the borrower to use the bank’s attorney to perform the title work, then the bank and the bank’s attorney reasonably can argue to the trier of fact that the borrower should be imputed with knowledge of the restrictive covenant because it is “entirely expected” that the borrower should have hired its own counsel to perform the title work. Schottenstein, 813 So.2d at 95.
The bank argues that even if the borrower stated a cause of action for fraud, we should affirm on the alternative ground that the borrower released the bank from any claims when the borrower entered into loan modification agreements with the bank in 2007 and 2008. We reject this argument because it would require us to
consider other pleadings beyond the four corners of the borrower’s fraud claim. See Scarfone, 59 So.3d at 372 (this court’s review of a trial court’s decision on a motion to dismiss is limited to the four corners of the complaint).
In sum, because the borrower has stated a cause of action for fraud against the bank and the bank’s attorney, we remand for the circuit court to: (1) vacate the summary final judgment in circuit case no. 08-58831(08); (2) reinstate the borrower’s fraud claim in that action; (3) vacate the summary final judgments in circuit case nos. 08-59637(08) and 08-59638(08); and (4) stay further action in circuit case nos. 08-59637(08) and 08-59638(08) pending the resolution of the borrower’s fraud claim in circuit case no. 08-58831(08).

Reversed and remanded.

STEVENSON and GROSS, JJ„ concur.