[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10758

Non-Argument Calendar

_____

JOSE GONZALEZ,

Plaintiff-Appellant,

*versus*

THE INDEPENDENT ORDER OF FORESTERS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23513-BB

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

In this action, Jose Gonzalez claims that he bought two life-insurances policies in reliance on material misrepresentations of fact that two insurance agents affiliated with The Independent Order of Foresters ("Foresters"), an insurance company, made. According to Gonzalez, the agents claimed that a rider to the policies providing accelerated death benefits would pay between 90% and 100% of the policies' face value if he met the terms for chronic illness. But when he eventually filed claims for chronic illness, Foresters offered substantially less. Gonzalez rejected the offers as inconsistent with the agents' representations, and then sued for breach of contract, fraudulent inducement, unjust enrichment, and negligent misrepresentation. The district court granted summary judgment to Foresters, concluding that the agents had no authority to bind Foresters, that Gonzalez's reliance on the agents' representations was not justified, and that Foresters was not unjustly enriched. After careful review, we affirm.

## I.

In late 2016 or early 2017, Gonzalez reached out to an independent insurance agency about obtaining life insurance that would provide protection if he became unable to work for health reasons and could not pay his mortgage. He met with an agent, Elena Orekhova, who was licensed to sell policies for Foresters, among other insurance companies. Orekhova claimed that the

Foresters policy included a rider for health conditions that would pay out 90% of the face value if he met its terms for chronic illness. She made similar claims over the phone. With those assurances, Gonzalez applied for the policy in January 2017.

In early February 2017, Gonzalez received and reviewed the policy certificate and the pertinent "Accelerated Death Benefit Rider" (the Rider). He understood he had around two weeks to accept or reject the policy.

Under the Rider, the insured has the option to accelerate and receive a "portion" of the death benefit in cases of chronic, critical, and terminal illnesses. As relevant here, the terms of the Rider explain in broad detail how Foresters calculates the accelerated death benefit, including various deductions that may apply and the "Acceleration Amount Limits." For critical and terminal illnesses, the maximum amount that can be accelerated is 95% of the eligible death benefit. But "[t]he maximum acceleration amount that can be accelerated in any 12 month period, as a result of the insured being diagnosed with a chronic illness, is 24% of the eligible death benefit." The Rider also notes that the actual "payment will be less . . . than the acceleration amount" for chronic illness, depending on various factors.

Before receiving the policy, Gonzalez also reviewed an Accelerated Death Benefit Rider Disclosure issued by Foresters. Like the Rider itself, the Disclosure states that "[f]or chronic illness the maximum amount that can be accelerated in any 12 month period is 24% of the eligible death benefit." The Disclosure also notes that,

due to various deductions, the actual payment for chronic illness "will be less, and depending on the individual circumstances of the claim could be substantially less, than the acceleration amount."

After reviewing the policy and the Rider, Gonzalez testified, he specifically questioned Orekhova about the terms of the Rider, which appeared to be different than what she had described. Gonzalez asked Orekhova to explain the provision in the Rider appearing to set a maximum benefit of 24% for chronic illness. The agent repeatedly told Gonzalez not to worry and that he would receive 90% of the policy's face value if he filed for chronic illness, suggesting that the contrary language in the Rider "ha[d] nothing to do with [him]" and had to be included for internal reasons. She also suggested that he could increase the policy if he had concerns about the size of the benefit based on the Rider's language. Despite his misgivings, Gonzalez decided to trust the agent's assurances and accepted the policy.

Several months later, in August 2018, Gonzalez applied for a second Foresters policy through the same insurance agency but a different agent, Sydney Lagogiannis. During the application process, Gonzalez questioned Lagogiannis about chronic illness coverage under the Rider, which she said was essentially the same as before, except it was "100 percent of face value" rather than 90%. After Gonzalez received the second policy, which contained a Rider materially identical to the first policy, Lagogiannis again assured him that the policy would pay 100% for chronic illness.

In 2020, Gonzalez submitted chronic illness claims under both policies after being diagnosed with back pain, incontinence, and vertigo.  Foresters made multiple offers on the policies, ultimately offering $3,297.82 under the first policy's Rider and $3,950,51 under the second policy's Rider.  Gonzalez rejected the offers as inconsistent with the representations made by Orekhova and Lagogiannis.

Notably, the two applications Gonzalez filed for the Foresters insurance policies include a provision advising that "[n]o agent/producer, medical examiner or any other person, except Foresters Executive Secretary or successor position, has power on behalf of Foresters to make, modify, or discharge an insurance contract."  Similarly, each policy included an "Entire Contract" provision, which states that "[n]o one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract."

## II.

Gonzalez sued Foresters in Florida state court, alleging claims of breach of contract, fraud in the inducement, unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation.  After Foresters removed the action to federal court, the district court dismissed the claim for fraudulent misrepresentation as duplicative of the claim for fraud in the inducement.

Then, the district court entered summary judgment for Foresters.  The court found that Gonzalez's claims for breach of

contract were based on oral representations made by the insurance agents, not the express terms of the contract, but that the agents had no authority to alter the terms of the policies.  The court found that the fraudulent-inducement claim failed because Gonzalez knew that the oral representations contradicted the express terms of the policies.  The court also concluded that the existence of the written policies precluded a claim for unjust enrichment, and that Gonzalez received what he paid for under the policies' plain terms.  Finally, the court reasoned that, because he knew that the oral representations contradicted the policies, Gonzalez could not show justifiable reliance for his negligent-misrepresentation claim.  Gonzalez appeals the grant of summary judgment.

## III.

We review *de novo* the grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party—here, Gonzalez.  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).  Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

We do not consider arguments raised for the first time on appeal in a civil case, outside of certain exceptional circumstances.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331–32

(11th Cir. 2004); *see also Finnigan v. Comm'r of Internal Revenue*, 926 F.3d 1261, 1271–72 (11th Cir. 2019). In proceedings before the district court, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The court need not "distill every potential argument that could be made based upon the materials before it on summary judgment." *Id.*

## IV.

The parties agree that Gonzalez's claims for breach of contract, fraudulent inducement, unjust enrichment, and negligent misrepresentation are governed by Florida law. We consider each claim in turn.

### A. Breach of Contract

To prevail on a claim for breach of contract, the plaintiff mush show "(1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach." *Cole v. Plantation Palms Homeowners Assoc., Inc.*, 371 So.3d 413, 415 n.2 (Fla. Dist. Ct. App. 2023); *see JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So.3d 500, 508 (Fla. Dist. Ct. App. 2020).

Gonzalez appears to assert two distinct theories of breach of contract on appeal. First, he contends that Foresters was bound by the oral representations made by its licensed agents because they exercised apparent authority on its behalf. And second, he asserts a violation of the express terms of the policies for failure to pay the 24% maximum death benefit for chronic illness.

Only the first argument, however, was presented to the district court in opposition to summary judgment. Gonzalez did not contend that Foresters violated the express terms of the Rider, and he expressly did "not dispute the clarity of the written terms." Because the second argument was raised for the first time on appeal, and has not been sufficiently developed in any case, we decline to consider it.[1] *See Access Now*, 385 F.3d at 1331–32.

Turning to Gonzalez's preserved argument, Florida law provides that an "insurer is bound by the acts of its agent if they are within the scope of the agent's apparent authority and the insured is not aware of any limitation." *Warren v. Dep't of Admin.*, 554 So. 2d 568, 571 (Fla. Dist. Ct. App. 1989). So "[w]hen an insurance agent assures a claimant of coverage," the insurance company can in some circumstances "be estopped from denying coverage." *Id.* Nevertheless, the plaintiff's "reliance on the apparent authority of an agent must be reasonable." *Fla. Power & Light Co. v. McRoberts*, 257 So. 3d 1023, 1026 (Fla. Dist. Ct. App. 2018).

---

[1] "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Gonzalez's argument based on the express terms of the Rider is perfunctory, at best. Regardless, the Rider makes clear that 24% is the *maximum* acceleration amount and that the actual payment to the insured will be less than the acceleration amount, depending on various factors. So the mere fact that Foresters offered a payment of less than 24% is not inconsistent with the Rider.

According to the Florida Supreme Court, an agent's actions do not bind the insurer where "the insured knew or was put on notice of inquiry as to limitations on the agent[s'] actual authority." *Almerico v. RLI Ins. Co.*, 716 So. 2d 774, 782 (Fla. 1998) (discussing Fla. Stat. § 626.342(2)).[2] An insured may be put on notice as to such limitations where contractual language, such as an insurance application, expressly limits the agents' authority. *See id.*; *see also Murphy v. John Hancock Mut. Life Ins. Co.*, 213 So. 2d 275, 276 (Fla. Dist. Ct. App. 1968) (stating that an agent cannot "bind a company by contracting to issue a policy when the written application expressly states that the agent cannot so contract").

Here, the district court properly granted summary judgment on Gonzalez's claims for breach of contract. It's undisputed that Orekhova and Lagogiannis were independent insurance agents licensed by Foresters to sell its policies, and so exercised apparent authority on its behalf. But undisputed evidence shows that Gonzalez was put on notice as to limitations on the agents' actual authority, both before and after receiving the policies. *See Almerico*, 716 So. 2d at 782. In applying for the policies, Gonzalez signed applications expressly advising that "[n]o agent/producer, medical examiner or any other person, except Foresters Executive

---

[2] Florida Statute § 626.342(2) provides that, where an insurer accepts business from an unaffiliated agent, the insurer is "liable to the insured in the same way that it would be liable had it expressly appointed the broker as its agent." *Almerico v. RLI Ins. Co.*, 716 So. 2d 774, 781 (Fla. 1998). Contrary to Gonzalez's view, even if § 626.342(2) applied in this case, it would not establish any distinct ground for liability in this case.

Secretary or successor position, has power on behalf of Foresters to make, modify, or discharge an insurance contract." And the policies themselves stated plainly that "[n]o one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract," and that any questions about policy terms should be directed to Foresters.

Florida courts have held that materially similar language is "sufficient to put an insured on notice of limitations placed on the [agents'] actual authority to bind the insurance company." *Amstar Ins. Co. v. Cadet*, 862 So. 2d 736, 741 (Fla. Dist. Ct. App. 2003); *see Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc.*, 49 So. 3d 774, 777–78 (Fla. Dist. Ct. App. 2010) (concluding that similar language in an insurance application "provide[d] actual notice on the limitations of [the agent] to bind the insurer").

In *Almerico*, for instance, the Florida Supreme Court indicated that similar language in an insurance application—"no agent shall have the right to make, alter, modify, or discharge any contract or policy issued on the basis of this Application"—was sufficient to prevent an insurance company from being bound by its agents' representations. 716 So. 2d at 781; *see also Kemberling v. Met-Life Life & Annuity Co.*, 368 F. App'x 63, 87–68 (11th Cir. 2010) (affirming the grant of summary judgment based on similar language in an insurance application).

Gonzalez offers no evidence to contradict these express limitations of authority or to show that Foresters otherwise vested, or

appeared to vest, the insurance agents with authority to make, modify, or interpret terms in Foresters's insurance contracts. Nor is there evidence that Foresters "ratified [the agents'] authority to bind it." *McRoberts*, 257 So. 3d at 1026 (noting that apparent authority can be established whether the principal ratifies the agent's conduct). Accordingly, Gonzalez cannot show that it was reasonable to believe the agents had the authority to bind Foresters to terms not contained in the policies. *See id.*

Finally, Gonzalez argues in vague terms that the district court ignored or "failed to consider the express allegations of Plaintiff's complaint regarding the Breach of Contract claims." But "[i]n opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." *Resolution Trust Corp.*, 43 F.3d at 599. And "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* Plus, Gonzalez does not identify with any specificity what the court overlooked.

For these reasons, we affirm the grant of summary judgment on Gonzalez's claims for breach of contract.

B.  *Fraudulent Inducement*

The essential elements of a claim for fraudulent inducement are "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d

1244, 1247 (Fla. Dist. Ct. App. 2008); *see also Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029–30 (11th Cir. 2017) (same).

In evaluating the element of justifiable reliance, the central question "is whether the recipient of the misrepresentation is justified in relying upon its truth." *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 94 (Fla. 2002) (quotation marks omitted). "[A] recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." *Besett v. Basnett*, 389 So. 2d 995, 998 (Fla. 1980). "Justifiable reliance, however, does not permit the recipient of a fraudulent misrepresentation to blindly rely on it." *Addison v. Carballosa*, 48 So. 3d 951, 955 (Fla. Dist. Ct. App. 2010). A falsity is regarded as obvious if a "cursory examination or investigation" would have revealed the falsity of the representation. *Schottenstein Homes*, 813 So. 2d at 93 (quotation marks omitted). Whether reliance was justified is a factual determination depending on "the totality of the circumstances surrounding the type of information, the nature of the communication between the parties, and the relative positions of the parties." *Id.* at 95.

Here, the district court did not err in granting summary judgment to Foresters. The relevant facts are undisputed. The agents promised Gonzalez that the Rider would pay between 90% and 100% of the policies' face value for a qualifying chronic illness claim. While Gonzalez had no duty to investigate those

24-10758                Opinion of the Court                13

representations, his testimony makes clear that he did so.[3] *See Be-sett*, 389 So. 2d at 998. Before choosing to accept the first policy, he reviewed the Rider and the Disclosure, which both expressly stated that the "maximum" acceleration amount in any 12-month period for chronic illness was "24% of the eligible death benefit," and raised that language with Orekhova. And that language in the Rider directly and unambiguously contradicted the agents' representations that he would receive 90% to 100% of the face value for chronic illness. *See, e.g., Rose*, 989 So. 2d at 1248 (holding that justifiable reliance was not shown where "the terms of the subsequent written agreement expressly and conspicuously contradict the oral statements").

Gonzalez does not dispute that the Rider unambiguously contradicted the agents' representations, but stresses that he did not understand the Rider or how the acceleration death benefit was calculated, which he describes as "extremely complicated," and that he "relied entirely on the Insurance Agents to understand" the Rider's terms. But he does not identify on appeal any Florida case law arising from similar facts. And bare reliance alone is not enough. *See Addison*, 48 So. 3d at 955. While Gonzalez ultimately decided to trust the agents' assurances, he did so despite the Rider's

---

[3] Had Gonzalez simply trusted the agents' misrepresentations without reviewing the actual terms of the policies, this might be a different case. *Cf. Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 647 (Fla. Dist. Ct. App. 2006) (holding that a claim for fraudulent inducement was for the jury to resolve where, among other facts, the plaintiffs "did not read this policy to confirm Martinez's representations because they accepted his representations as true").

14                    Opinion of the Court                    24-10758

clear and contradictory terms, as well as language in the policies otherwise warning that "[n]o one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract."

Accordingly, based on the clear and contradictory language in the Rider and policies, as well as Gonzalez's own sworn testimony, a reasonable jury could not return a verdict against Foresters for fraudulent inducement.[4]

## C.  Unjust Enrichment

"Florida courts have long recognized a cause of action for unjust enrichment to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (quotation marks omitted).  But "it is well settled that a plaintiff cannot pursue an equitable theory, such as unjust enrichment . . . to prove entitlement to relief if an express contract exists."  *Doral Collision Ctr., Inc. v. Daimler Trust*, 341 So. 3d 424, 430 (Fla. Dist. Ct. App. 2022).

---

[4] Gonzalez points out that the district court did not make any specific findings as to the second policy.  But he does not identify any differences between the two policies, which contain the same Rider and other pertinent policy language, or their relevant circumstances.

The district court offered two grounds for granting summary judgment on the unjust-enrichment claim. First, the court found that Gonzalez could not pursue a claim of unjust enrichment while express contracts existed. And second, the court concluded that Foresters had shown that Gonzalez received what he paid for under the policies' plain terms, noting that Gonzalez "does not respond to this argument."

Gonzalez argues that the district court's second determination "is not substantiated and should be reversed" because he "did not accept [Foresters'] offers," which, in his view, "did not represent the promises made to him prior to issuance of the policies" or "reflect payment based on the express terms of the policies at 24%." Gonzalez has not, however, challenged the district court's finding that the existence of the two policies precluded a claim for unjust enrichment.

"When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). That is the case here. Because Gonzalez fails to dispute that the existence of the policies precludes his claim against Foresters for unjust enrichment, he has abandoned any challenge to that alternative determination, which adequately supports the court's grant of summary judgment on this claim.

D. *Negligent Misrepresentation*

In Florida, plaintiffs may establish a claim of negligent misrepresentation by proving (1) there was a misrepresentation of material fact the plaintiff believed to be true but was false; (2) the defendant should have known the representations were false; (3) the defendant intended to induce Plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury. *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. Dist. Ct. App. 2017); *see also Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993).

Gonzalez does not dispute that the element of justifiable reliance is the same for negligent-misrepresentation claims as it is for claims of fraudulent inducement. And for the reasons we've already explained, we agree with the district court that Gonzalez cannot establish justifiable reliance on the agents' misrepresentations.

Gonzalez also wrongly asserts that the district court improperly required him to prove an intent to deceive. Instead of requiring an intent to deceive, as Gonzalez claims, the court properly required him to show an intent "to induce," which is an element of negligent representation. *See Arlington Pebble Creek*, 232 So. 3d at 505 ("(3) the defendant intended to induce the plaintiff to rely on the misrepresentation"). The order does not reference an intent to deceive. In any case, the absence of justifiable reliance alone warrants summary judgment on this claim. *See id.*

**V.**

24-10758                Opinion of the Court                17

In sum, we affirm the district court's grant of summary judgment in favor of Foresters on Gonzalez's complaint.

**AFFIRMED.**